No. 31,875

Laura E. Long and Ruth L. Dary, as Executrices of the Estate of A. W. Long, Deceased, *Appellants,* v. The Prairie Oil & Gas Company (now known as Commonwealth Oil and Gas Company), L. R. Crawford, P. C. Spencer, Z. M. Brown, W. D. Womer and Sinclair Prairie Oil Company, *Appellees* and *Cross-Appellants.*

(39 P. 2d 446)

Opinion filed January 26, 1935.

*Ira C. Snyder,* of Manhattan, *W. T. Roche, C. Vincent Jones,* both of Clay` Center, and *William Ritchie,* of Omaha, Neb., for the appellants.

*R. P. Evans, George Clammer, Hal E. Harlan, A. M. Johnston,* all of Manhattan, *Walter E. Brown,* of Kansas City, Mo., *Edwin H. Chandler* and *Paul B. Mason,* both of Tulsa, Okla., for the appellees and cross-appellants.

The opinion of the court was delivered by

Hutchison, J.: This is an action to recover from the defendants on account of promises and representations made by them to A. W. Long in his lifetime. It was originally brought by A. W. Long, personally, against most of the same defendants, and it was here on appeal before on two preliminary matters, the ruling upon them being reported in 135 Kan. 440, 10 P. 2d 894, the one being the right to take depositions of defendants before the issues were framed, and the other on the ruling of the trial court striking out some parts of the petition. Since that time A. W. Long has died, and the case was revived in the name of his wife and daughter, as executrices of his estate, and an additional corporation was made a party defendant. The defendants now consist of three corporations and four

individuals. One of the individuals has died since the ruling of the trial court in the matter that is now before us, and no revivor has been made as to him.

The substituted plaintiffs filed an amended and supplemental petition. Each and all of the defendants filed general demurrers to that petition. Before the hearing on the demurrers each and all of the defendants filed three motions: one to require the plaintiffs to separately state and number their causes of action; another to require the plaintiffs to make the amended and supplemental petition more definite and certain; and the third to strike out three certain parts of the amended and supplemental petition. The plaintiffs filed a motion to strike from the files each and all of these motions filed by the defendants. The motions were all heard by the trial court before hearing the demurrers.

The court overruled the motion of the plaintiffs to strike the motions of the defendants from the files. The trial court then overruled the defendants' motions to separately state and number the causes of action and to make the petition more definite and certain, and overruled the motion to strike out one certain part of the petition and sustained it as to two other parts. The court then heard the demurrers and ruled upon them by sustaining them as to the defendants Brown and Crawford (Crawford now deceased), and overruling them as to all the other defendants. All parties excepted to each adverse ruling. The plaintiffs appeal from rulings adverse to them, namely, the striking out of two parts of the amended and supplemental petition, paragraphs 8 and 9, and sustaining the demurrers as to Brown and Crawford, and the defendants each and all, except Crawford, have filed cross appeals as to the rulings adverse to them.

The controversy involved between the plaintiffs and defendants as to all these rulings depends almost entirely upon what the nature and character of the action is, which the plaintiffs have brought, and what they seek to recover thereby. The plaintiffs maintain that their action is for damages for fraud and conspiracy, and that they were entitled to recover upon the fraudulent promises and representations of the defendants, compensation for the life expectancy of Mr. Long, and also exemplary and punitive damages.

The trial court accepted, in a measure, the theory advanced by the plaintiffs, but expressed in its written opinion a serious doubt as to the measure of recovery, whereas the defendants assert that the

allegations of the petition may be for breach of contract, with several possibilities as to the measure of recovery, if any, under the amended and supplemental petition, and because of this apparent indefiniteness and uncertainty in the nature of the cause of action and right of recovery and the fact that the defendants filed motions to make the petition more definite and certain, which were overruled before the ruling upon the demurrers, the question properly arises on the demurrers as to the actual election of remedies by the plaintiffs so as to fully advise the defendants as to the nature and cause of the action at this earlier stage of the proceedings rather than during the progress of the trial, as would be the privilege of the plaintiffs had no such motion been filed to make the petition more definite and certain.

The amended and supplemental petition pleads in substance as follows:

1. The fact of the death of A. W. Long and the appointment and qualification of the executrices and their residence.

2. The organization and existence of the several corporations and their relations one to the other as purchasers or holders of stock therein, and control and operation of the business with headquarters at Independence, Montgomery county, Kan., and that the last mentioned of the three corporations was a subsidiary of and controlled by the Sinclair Consolidated Oil Company, a New York corporation, not made a party to the action; that said New York corporation had purchased all the assets of the first two named corporations and agreed to pay all the indebtedness of the Prairie Oil and Gas Company; that the New York corporation so owning and holding the stock was not authorized to do business in Kansas and that it transacted business through its subsidiary company, the Sinclair Prairie Oil Company, and that this was so devised by the defendants in connection therewith to prevent Kansas creditors of the companies from collecting their claims in the courts of Kansas against the Commonwealth Oil and Gas Company from the assets which were transferred to the New York company, and that this was a fraud on its creditors, notwithstanding it received valuable property transferred to it by the Sinclair Prairie Oil Company without notifying the creditors of the Commonwealth Oil and Gas Company, as required under the bulk-sales law of Kansas; that the defendant Crawford was a resident of Independence, Kan., and agent and trustee for the Prairie Oil and Gas Company for the purchas-

ing, acquiring, holding, controlling and operating of gasoline and motor-oil distributing properties; that the defendant Spencer, a resident of Independence, Kan., was an attorney at law and acted as agent and attorney for and on behalf of the defendant, the Prairie Oil and Gas Company, and that defendant Brown was a resident of Independence, Kan., and an engineer and acted as agent and engineer for and on behalf of the Prairie Oil and Gas Company.

3. That the Long Oil Company was a Kansas corporation with its principal office and place of business at Manhattan, Kan.; that it owned and operated in 1930 and the early part of 1931 sixty-eight gasoline and oil service stations and a number of bulk stations, all located in the state of Kansas, selling annually about 5,000,000 gallons of gasoline, kerosene and distillates, approximately 220,000 gallons of lubricating oil, and approximately 75,000 pounds of grease; that the business was built up by A. W. Long, who is now deceased; that he was the original plaintiff and commenced this business in 1915 with one service station and developed it to its condition in 1931, it having been chartered and organized under the laws of Kansas as the Long Oil Company in 1917. The Long Oil Company in the early part of 1931 had 2,500 shares of common stock outstanding at the par value of $100 per share, and 4,700 shares of preferred stock at the par value of $100 per share, without the voting power in the common stock unless the preferred stock passed three consecutive annual dividends; that of these 2,500 shares of the common stock A. W. Long owned 1,082 shares. His wife owned 10 shares and his daughter 5 shares. That friends of his and those who reposed trust and confidence in him and his business ability owned and controlled enough more shares to give him the control of the Long Oil Company, and he would have continued to control the company for as long a time as he should live had he, his wife and daughter continued to own and hold their shares of common stock; that he had for several years prior to February 6, 1931, been elected as president and had acted as general manager of the Long Oil Company at a salary of $500 per month, and he would and could have continued to act in such capacity and receive such salary as long as he should live had he and his wife and daughter continued to own and hold such common stock.

4. That W. D. Womer, a resident of Manhattan, Kan., and president of the First National Bank at that place, for and on behalf of the bank, from 1924 to February, 1931, handled the bank-

ing business of A. W. Long and the Long Oil Company, extending numerous loans in his own name and the name of the bank to the Long Oil Company and discounting paper with other financial institutions for the Long Oil Company, indorsing many other notes so discounted; that about February, 1931, the First National Bank held about $85,000 of indebtedness against the Long Oil Company.

5. That the health of A. W. Long for more than two years prior to the spring of 1931 was seriously impaired by hemorrhages of the bronchial tubes and a slight stroke of paralysis which made it impossible for him to exercise his usual mental capacity to the fullest extent, and caused him to tire easily when discussing or considering business matters and to ease up on his physical and mental exertions, and that he relied implicitly and depended more completely than before upon the business and financial advice of Womer; that all the defendants except the Sinclair Prairie Oil Company knew of Long's depleted mental and physical condition and they conspired among themselves to obtain for the Prairie Oil and Gas Company, now named Commonwealth Oil & Gas Company, from Long and his associates, and without paying any consideration therefor, the control of the Long Oil Company, and did obtain such control by means of false representations and acts and breach of fiduciary relationship existing between Long and Womer and the wrongful, concerted use of the interests and influence and power of the several defendants. Among the conspiracies was that to deprive Long of his income of $500 per month which he had from the Long Oil Company and to prevent him from ever again engaging in the gasoline and distributing business in the territory in which the Long company was operating and in which he had the good will of thousands of customers.

6. That Womer at first suggested to Long that the Prairie Oil and Gas Company might purchase the Long Oil Company at a price advantageous and fair to the stockholders thereof, and suggested that the company be permitted to have access to and examine the business and financial affairs of the Long Oil Company for that purpose, and that because of his physical health such a sale would be advantageous to him and to the stockholders of his company. To this Long assented, and permitted the Prairie Oil and Gas Company, through its agents and representatives, defendants Spencer and Brown, to have access to and examine the business and financial affairs of the company; that in the early part of February,

1931, Womer and his own attorney, who was also the attorney for Long and the Long Oil Company, went to the home of Long and told him that the papers were prepared for the appointment of a receiver of the Long Oil Company by the attorneys for the First National Bank of Manhattan, which was demanding immediate payment of the money due it from the Long Oil Company, and advised Long that the investigation had been made by the agents and representatives of the Prairie Oil and Gas Company and that it was going to make a proposition to him concerning the purchase of the property of the Long Oil Company, and that the investigation showed the common stock of the oil company was worthless, and that it would require the surrender of such stock without compensation, except that the oil and gas company intended to arrange for the employment of A. W. Long for a period of two years at a salary of $500 per month, and that as he was sick he would be unable to properly manage and control the company, and that said offer would be the best thing that he could do, and that if he did not consent to accept the offer of this company, the First National Bank would immediately file its petition for receivership, and that it would not do to attempt to consult the holders of the preferred stock. The only thing that could be done would be to make the sale or go into receivership; that at that time the Long Oil Company possessed a number of sites and filling stations erected thereon and other real estate which were unencumbered, and on which funds could have been realized if no suit or receivership proceedings were commenced, and that the defendants knew of such facts; that in the early part of February, 1931, the defendant Spencer told Long that on account of his health the only thing for him to do was to get out of the company before it broke, and at the same time orally stated in behalf of the defendant oil and gas companies that they would give him a contract for $500 a month for a period of at least two years and until he was rested and free from his worries, and would pay the preferred stockholders $55 a share and would want seventy-five per cent of the preferred stock at that price and would loan the company $200,000 and take a mortgage on its property to secure the same, provided he would turn over to the Prairie Oil and Gas Company 1,300 shares of the common stock of the Long Oil Company; that these representations made to A. W. Long by W. D. Womer and P. C. Spencer with reference to the salary were false and fraudulent in that the Prairie Oil and Gas Company and the

Commonwealth Oil & Gas Company and their agents did not intend at that time that Long should be continued in the employ of the Long Oil Company or any of the defendant companies, but intended to discharge him within a short time after these defendant companies should acquire full control of the Long Oil Company. Thereafter, on the 5th day of February, 1931, the defendant Womer orally stated to Long that Spencer had a contract prepared, that he had read it, and that it guaranteed to Long a salary of $500 a month for at least two years and that it was a good deal for him, that the Long Oil Company would go ahead just as it had and that he should by all means avail himself of it before something happened to spoil it, and that it would not be safe to look for a better deal because the attorneys were going to file a suit for receivership; that on account of his physical and mental infirmities and the confidential and fiduciary relationship existing between him and Womer, Long agreed to accept the offer of these oil companies so made by Spencer and Womer and to sign the agreement and assign his 1,082 shares of common stock and procure his wife and daughter to assign their 15 shares and to deliver the same to Womer, all indorsed in blank, which he would not have done if he had not relied upon and believed the representations by defendants.

7. That on the 5th day of February, 1931, upon the oral statements of Spencer that he had prepared a contract along these lines, including a salary to Long of $500 a month for a period of at least two years, and that the stock of Long, delivered to Womer, was to be held by Crawford as trustee for the Prairie Oil and Gas Company, Long signed the contract so prepared and represented without reading it and relied fully upon the representations of Spencer that the contract contained these provisions heretofore enumerated and again repeated by Spencer, and thereafter it was found and called to the attention of Long that the matter of salary as stated was not contained in the agreement but was made "subject, however, to the payment of a salary to the first party which may be mutually. agreeable to the parties in case the first party is requested to remain as an active official"; that upon the attention of Spencer being called to such oversight, he orally stated that it was a mere oversight and that he would prepare a writing to correct the matter, which was done, and in pursuance of such conspiracy the defendant Spencer did prepare another contract attached thereto as exhibit B, and orally advised Long that it provided for the salary

as theretofore stated of $500 a month for a period of at least two years, and on account of the fiduciary relationship existing between Long and Womer, Long on that day signed the additional letter or contract said to correct the oversight as to the promised salary for at least two years, and that the representations were false and fraudulent and known by Spencer to be false and fraudulent; that neither the contract nor the letter granted to the plaintiff the right to receive such salary for at least two years, and that Long would not have signed such contract and letter unless he had believed the representations and the contract and letter to give him such salary; that believing that such was the contract and with his confidential relationship which existed he procured his friends to assign their certificates of stock and deliver them to Womer for the trustee Crawford so as to make a total of 1,300 shares of the 2,500 shares of stock, none of which things he would have done if he had not believed the promises made and that the contracts were as stated, and because of the confidential relationship with Womer; that the Long Oil Company thereafter on May 25, 1931, advised Long in writing that the company would not continue his employment for a longer period, and refused to pay him any further salary, and that he did not know until he received such letter of May 25 that the company and other defendants did not intend to continue him in its employ nor pay him the salary, and that the letter, or exhibit B, was not a legally enforceable contract; that the defendants have neither paid nor offered to pay anything to Long, his heirs or assigns since the first of June, 1931, and have not returned, nor offered to return, to them the 1,300 shares of common stock that the defendant companies received from him and his relatives, but that the companies have retained the same and all the benefits received by them through such conspiracy, fraud, duress and unlawful concert of action; that Long was unable to earn any salary or hold any similar position without such stock, all of which the defendants well knew; that outside of the salary for the months of March, April and May, 1931, Long has received nothing in the way of cash or other remuneration to himself, his heirs or assigns from the defendants on account of the assignment and delivery of 1,300 shares of stock, and that by reason thereof he was deprived of the control of the Long Oil Company and the employment of himself at a salary of $500 per month.

8. That A. W. Long died on the first day of June, 1932, at the age of 59 years, and that by the American Experience Table of

Mortality he had a life expectancy of fourteen years; that if he had continued in the ownership of the stock and control of the Long Oil Company and had lived out his life expectancy he would have been able to receive a salary of $84,000 during said life expectancy; that by deducting the interest on the same it would amount to a present sum of $57,000, which is due him and his heirs and assigns from the defendants.

9. That because of the conspiracy and fraudulent representations, and on account of the wantonness and unconscionable conduct and deceit by which the foregoing damages were perpetrated upon Long by the defendants under the circumstances as they existed, the plaintiffs, as executrices of the estate of A. W. Long, are entitled to exemplary damages against the defendants in the sum of $2,000,000.

The allegations of the amended and supplemental petition, without the exhibits, cover nineteen pages in the printed abstract. Some of the allegations might be classed as evidence pleaded, rather than allegations, and some might be termed conclusions of law which might very properly and without loss or detriment have been omitted from the petition. (*Kansas Gas & Electric Co. v. Public Service Com.*, 122 Kan. 462, 467, 251 Pac. 1097.)

While the appellants consistently maintain that this is an action to recover damages for fraud and conspiracy, yet they fail to explain the use and necessity for so many allegations which imply at least a breach of contract and a desire to recover many different amounts and for many different losses sustained. In the recent case of *Sluss v. Brown-Crummer Inv. Co.*, 137 Kan. 847, 22 P. 2d 965, it was held:

"While the general rule is that where a general demurrer is filed to a petition, no motion to make more definite and certain having been presented, the demurrer should be overruled if the facts stated constitute a cause of action, whether well pleaded or not, and inconsistent causes of action do not render a pleading demurrable, a different rule must be applied where plaintiff, as a result of procuring rulings favorable to him, defeats every effort of the defendant to ascertain on what theory he founds his cause of action; and in such case, if the petition is not drawn upon a single and definite theory or there is such a confusion of theories that the court cannot determine from the general scope of the petition upon which of several theories a recovery is sought, it is insufficient, and a demurrer thereto should be sustained." (Syl. ¶ 2.)

This modification of the general rule as to the insufficiency of a petition under such circumstances as to create a confusion as to the real and only theory upon which the plaintiffs can or are attempting

to recover is plainly and conclusively outlined and stated in the concluding part of the opinion above cited on page 854 thereof, so that it will not serve any good purpose to attempt such reasoning again except to say that we find it applicable to the allegations in the amended and supplemental petition in the case at bar, and therefore conclude that the demurrers of the two individual defendants were properly sustained and the demurrers of all the other defendants should have been sustained.

Appellants cite many authorities as to the uncertainties which affect merely the measure of recovery. If that were all the uncertainty involved in this pleading, we would not think the decision in the Brown-Crummer case, supra, would strictly apply, but if appellants' theory is correct, that this is purely and exclusively an action for damages for fraud, there is unquestionably a serious surplus of allegations contained in the petition tending to state a breach of contract.

The rulings upon the several demurrers were made after the trial court had struck out paragraphs 8 and 9, setting up damages sustained for the period of life expectancy and punitive damages. We concur in both these rulings under the present allegations of the amended and supplemental petition as the necessary allegations upon which the first was attempted to be based were too speculative and uncertain, and of course the punitive damages must fail when actual damages are eliminated.

The rulings of the trial court are therefore sustained in part and overruled in part, as heretofore indicated, and the cause is remanded with instructions to sustain the demurrers of all the defendants.