No. 35,365

E. H. Dellinger, *Appellant*, v. County Social Welfare Board of Harper County, *Appellee*.

(124 P. 2d 513)

Opinion filed April 11, 1942.

*Donald Muir*, of Anthony, and *W. G. Muir*, of Harper, were on the briefs for the appellant.

*Martin S. Hall*, of Harper, and *Max D. Hall*, of Anthony, argued the cause for the appellee.

The opinion of the court was delivered by

Dawson, C. J.: Dr. E. H. Dellinger, a regularly practicing physician and surgeon of Anthony, performed eleven surgical operations upon indigent residents of Harper county, and thereafter presented to the county welfare board his bill for those services, $1,100 with interest. The county welfare board rejected the bill. Hence this lawsuit.

In his amended petition plaintiff alleged the pertinent facts—that between the dates of February 4, 1938, and September 7, 1939, he performed the proper and necessary surgical services on eleven

indigent residents of Harper county, to wit, four operations for acute appendicitis, two for gangrenous appendix, four for ruptured appendix, and one for cancer of the breast; that none of those indigent patients could pay for his services; that C. M. Scott, the county director who was duly authorized by the defendant board to direct the welfare work in Harper county, knew that each of the alleged operations was necessary and all were emergency cases and that "in each and every case said C. M. Scott . . . directed and authorized said operations."

Plaintiff also alleged that he had presented to the defendant board his verified voucher for the alleged services, that his charges of $100 for each of them were reasonable, and that the defendant board "had failed to allow or disallow said claims." Then followed eleven specific causes of action, with a prayer in each for $100 with interest from the date the particular service was rendered.

Attached to plaintiff's petition was a copy of the verified claim he had presented to the county welfare board for payment. It is a document extending to three printed pages, one paragraph of which reads:

"That the county social welfare board of Harper county, Kansas, has never entered into any agreement with the physicians and surgeons of Harper county, Kansas, as to who should perform professional services for indigent persons of Harper county, Kansas, nor has it made any arrangements for the payment of such services either with individual physicians or surgeons, or with the Harper County Medical Society, or otherwise."

In its answer the defendant board made some general admissions and denials and alleged that since long prior to 1938 it had been the policy of the board of county commissioners of Harper county (on whom the duties of the county social welfare board afterwards devolved by subsequent legislation) "to allow no claims for major surgery for indigent persons for the reason that such services had always been available without expense to said county."

The answer further alleged that at the time C. M. Scott was employed as county director he was familiar with the aforesaid policy and that his authority was limited accordingly. It was further alleged—

"That defendant specifically denies that the said C. M. Scott, county director, at any time authorized plaintiff to perform any of the operations set forth in any of the causes of action in plaintiff's amended petition and further alleges and states that the said C. M. Scott, county director, was without authority to authorize any of such operations and that had he done so the

same would have been beyond the scope of his employment and not binding upon defendant."

Defendant also raised the two years' provision of the statute of limitations against the first five causes of action, the last of which was for a surgical operation performed on August 1, 1938, and this action was not begun until August 26, 1940.

The cause was tried by the court which made findings of fact, two of which read:

"5. That there is no county hospital or county physician or surgeon employed by said board, and clients were expected to select their own physician or surgeon.

"6. That it has been the policy of the county social welfare board since its organization, and prior thereto was the policy of the board of county commissioners of Harper county, to pay no bills to local physicians and surgeons, for major surgery performed upon poor and indigent persons; residents of said county. That the basis of such policy seems to have been that since the surgeons of Harper county would perform major surgery rather than let the patient die, irrespective of whether compensation therefor was promised or paid, therefore, there was no necessity for the county assuming any burden for major surgery to Harper county doctors. Such policy seems to have been more or less generally known among the physicians and surgeons of the county, including the plaintiff. While such physicians and surgeons did not volunteer their services in such cases, they did render their services as a matter of professional ethics and with only occasional complaints."

To these findings the trial court appended an extended memorandum opinion which limits of space forbid us to reproduce, but the substance of which was. that the county social welfare board was merely the local administrative agency of the state board of social welfare, and that it had no statutory power to contract or to sue or to be sued. In its conclusions of law the trial court held that defendant, being merely an agency of the state, could not waive a question of jurisdiction, and that its demurrer to plaintiff's evidence should be sustained.

Judgment sustaining defendant's demurrer and dismissing the action followed, and the cause is brought here for review.

At the outset we note that the record contains no motion for a new trial, nor ruling thereon, nor is there any exception to the findings of fact nor any motion for judgment in favor of plaintiff on the findings of fact, nor is there any specification of errors upon which this court might center its attention to determine whether some material error of law may inhere in the judgment.

However, agreeably to the wishes of the court that these obstacles

to a review be laid to one side, to the end that the broader aspects of the appeal may be considered so far as practicable, the brief for appellant first suggests that the action was "brought in the nature of a declaratory judgment joined with the claims for services." Further along in his brief appellant says "this suit may be continued in the appellate court as one *in mandamus* to compel the county welfare board to carry out . . . findings of the lower court." Still later in his brief appellant says: "The case here is in the nature of a *contractual* case. There was an *actual contract* between the doctor and the board, by its executive and administrative official, Mr. Scott, to perform the operations, which was an *implied contract* on the part of the board to pay for the services." (Italics ours.)

The instances must be rare where such a confusion of theories has been presented for the recovery of money alleged to be due on *quantum meruit.* In *Grentner v. Fehrenschield,* 64 Kan. 764, 68 Pac. 619, it was said:

"The plaintiff must frame his petition upon a distinct and definite theory, and upon that theory the facts alleged must state a good cause of action. If the petition is not drawn upon a single and definite theory, or there is such a confusion of theories alleged that the court cannot determine from the general scope of the petition upon which of several theories a recovery is sought, it is insufficient." (Syl. ¶ 1.)

This rule has often been applied. (*McDowell v. Geist,* 134 Kan. 789, 8 P. 2d 372; *Davis v. Union State Bank,* 137 Kan. 264, 20 P. 2d 508; *Long v. Prairie Oil & Gas Co.,* 141 Kan. 47, 40 P. 2d 446; *Lofland v. Croman,* 152 Kan. 312, 317, 103 P. 2d 772.) It is true, of course, that if a pleader plainly states a cause of action on any tenable theory, his cause will not fail because he may have misconceived the nature of his action or the relief to which he may be entitled. (*Wellington v. Insurance Co.,* 112 Kan. 687, 212 Pac. 892; *Parkhurst v. Investors Syndicate,* 138 Kan. 7, 10, 11, 23 P. 2d 589; *United Brethren, etc., v. Mount Carmel Community Cemetery Ass'n,* 152 Kan. 243, 246, 103 P. 2d 877.) Here, however, a patient study of the record and appellant's brief reveals no tenable theory on which he could recover. While appellant alleged that he had contracted with the county director to perform the eleven operations and that he did so at the latter's request the evidence did not sustain that allegation; quite the contrary. Moreover, the county director had no authority to make such a contract nor to authorize

such expenditure. (G. S. 1941 Supp. 39-712; 59 C. J. 172, 173.) Neither does our new statute, Laws of 1937, chapter 327, as amended, G. S. 1941 Supp. 39-701 *et seq.*, creating a state board of social welfare, providing for its articulation with the federal social security authority, and for the creation of county boards of social welfare over which it has supervisory authority, authorize the county social welfare board on its own independent responsibility to obligate itself to pay such an account as this one for which appellant seeks a recovery. Nor does the statute contemplate that the county social welfare board shall be harassed with litigation. It is not even an independent governmental agency, but is subordinate to the state board. (G. S. 1941 Supp. 39-708 *b, d, s.*) The powers and duties of the county social welfare agency are to be exercised and discharged according to rules and regulations prescribed by the state board. (G. S. 1941 Supp. 39-711.) The fact that the statute expressly declares that the state board may sue and be sued (G. S. 1941 Supp. 39-708 *k*) and is silent on the same theme in respect to the county board, justifies an inference that such want of capacity for litigation was intended. *Expressio unius est alterius exclusio.*

In one controlling respect the instant case is like our recent cases of *Melencamp v. Stanton County Comm'rs,* 152 Kan. 571, 106 Pac. 1059, and *Lewis v. Scott County Comm'rs,* 152 Kan. 579, 106 P. 2d 1061, in which it was held that the board of county commissioners was not liable to a physician for his professional services to an indigent person "unless some duly authorized official of the county approved and directed the performance of the service for which recovery is sought." (p. 581.)

Appellant complains because the trial court ruled that jurisdiction is a matter which cannot be waived by an agency of the state. He contends that this point was not fairly presented by the pleadings, and that jurisdiction is a matter which can be waived. It is ordinarily true that jurisdiction of the person may be waived, so far as private litigants are concerned. (*Meixell v. Kirkpatrick,* 29 Kan. 679, 683; *King v. Ingels,* 121 Kan. 790, 250 Pac. 306; *Suter Bros. v. Hebert,* 133 Kan. 262, 299 Pac. 627.) But that rule does not apply to governmental agencies, especially when they have no legal capacity to conduct or defend litigation—which is precisely the status of the county social welfare board. In the case of *In re Richards,* 106 Kan. 105, 186 Pac. 1025, a question of jurisdiction

arose in an appeal from the probate court to the district court. The latter court dismissed the appeal. On review by this court, we said:

"If the question were one which only concerned jurisdiction of the person, an informality might be waived; but the want of a statutory prerequisite to the conferring of jurisdiction of a cause cannot be waived. In *Tucker v. Tucker,* 97 Kan. 61, 154 Pac. 269, it was said:

" 'This jurisdiction is vested by statute only, and no estoppel, laches or informality of a party can confer it. Neither does failure to raise the question relieve us of the duty to decline, even of our own motion, the exercise of jurisdiction which we do not possess.' (Citing cases.) (pp. 62, 106.)"

See, also, *Construction Co. v. Board of Administration,* 105 Kan. 291, 182 Pac. 286; *Purity Oats Co. v. State,* 125 Kan. 558, 264 Pac. 740; 14 Am. Jur. 380-381.

It is finally urged that the social welfare statute makes it the duty of the county board to make rules and regulations regarding aid, assistance or service to persons in need within the county. This contention is too broadly stated, since the statute repeatedly vests the primary control of all such matters in the state board, and it promulgates the general rules under which the county board operates; and it is not shown that either board has made any rule which authorized any official functionary to employ the appellant to perform the services nor to bind the county board to pay for them.

The judgment is affirmed.

HOCH, J., not participating.