No. 37,482

THEODORE ERWIN, Deceased, THE STATE DEPARTMENT OF SOCIAL WELFARE, ETC., *Appellant,* v. W. G. LEONARD, Administrator, *Appellee.*

(203 P. 2d 207)

Opinion filed March 5, 1949.

*Charles F. McCoy,* of Topeka, argued the cause, and *Marvin E. Larson,* of Topeka, was with him on the briefs for the appellant.

*Wilbur G. Leonard,* of Council Grove, argued the cause and was on the briefs for the appellee.

The opinion of the court was delivered by

SMITH, J.: This was a claim against a decedent's estate to recover the amount of old-age assistance granted to him during his lifetime, which it is claimed he obtained by fraudulent representations to the county board of social welfare. The probate court, and the district court on appeal, each held the claim should not be allowed. The state board of social welfare has appealed.

The claim alleged that from November 4, 1946, to May 5, 1947, the county department of social welfare granted old-age assistance to Theodore Erwin in the sum of $235. Shortly after he received the last check he died. The state department of social welfare alleged it was a body politic and corporate, created, organized and existing under the laws of the state of Kansas; that the county board of social welfare of Morris county was a subordinate agency of the state department of social welfare and that the county board of social welfare had a statutory duty to provide old-age assistance under certain rules and regulations, among them being that the appellant must be in need, to the extent that he did not have sufficient income or resources to provide a reasonable subsistence compatible with decency and health; that Erwin made application to the Morris county board of social welfare for old-age assistance and fraudulently represented he was without income or resources to provide a reasonable subsistence compatible with decency and health, in that he had no property or money and that his only income was from earnings approximately nine or ten dollars a month.

The claim then set out payments from November 4, 1946, through May 5, 1947, in the amount of $235 and alleged that Erwin at the time of his application for assistance had money and property constituting resources with which to provide himself a reasonable subsistence compatible with decency and health and was not eligible for assistance; and by reason of the false representation made he had received $235 from the board, to which he was not entitled, and which in law and equity belonged to the county board of social welfare. Claimant, the state department of social welfare, presented its demand on behalf of the Morris county board of social welfare and prayed that it be allowed the sum of $235. The administrator of Erwin's estate demurred to the petition for the reason that it did not state facts sufficient to constitute a legal claim against the estate. The demurrer was sustained by the probate court. On appeal the district court stated there was no question raised as to the authority of the state department of social welfare to present the claim, stated the sole question was as to whether funds paid by the welfare department for old-age assistance upon fraudulent representations of a decedent should be recovered from decedent's estate. The court referred to the case of *In re Estate of Butler,* 159 Kan. 144, 152 P. 2d 815. This was a claim made by a county board of

social welfare against the estate of a decedent. We held that G. S. 1947 Supp. 39-720, did not give the county board authority to bring such an action. The trial court referred to this opinion and stated it would follow it. The court held in favor of the administrator. The court also held that the state department of social welfare was given by G. S. 1947 Supp. 39-708, only a limited power to sue and be sued and quoted subsection 12 of that section, as follows:

"(k) All contracts shall be made in the name of the State Board of Social Welfare of Kansas,' and in such name the state board may sue and be sued *upon such contracts.*"

The court held that this statute limited the power of the state social welfare department to sue to cases where it sued upon contracts and that since this is not upon a contract, the state department of social welfare had no authority to sue.

We shall first discuss what we held in *In re Estate of Butler,* supra. The state department of social welfare points out they did not present this claim against Erwin pursuant to the same statute as the claim dealt with in that opinion. In that case Butler had made a fraudulent claim against the county board of social welfare. The statute we considered was G. S. 1943 Supp. 39-720. That statute made it a crime to make a fraudulent claim against the county board of social welfare and provided that one who should be convicted of a violation of the statute should be required to remit to the county board the amount of money wrongfully obtained. We reviewed the history of various comparatively recent enactments on the general subject of recovery of welfare payments and held the statute to be purely a punitive one. We said:

"Since G. S. 1943 Supp. 39-720 is purely a penal statute and affords the appellee no ground for relief in a civil proceeding the judgment overruling the demurrer to the petition was erroneous." (p. 149.)

In consideration of the case we gave considerable weight to what we said in *Dellinger v. Harper County Social Welfare Board,* 155 Kan. 207, 124 P. 2d 513. That was a case where a surgeon sued the county board for fees for surgical services performed on needy persons. We held against recovery and said:

"Nor does the statute contemplate that the county social welfare board shall be harassed with litigation. It is not even an independent governmental agency, but is subordinate to the state board. (G. S. 1941 Supp. 39-708 b, d, s.) The powers and duties of the county social welfare agency are to be exercised and discharged according to rules and regulations prescribed by the state

board. (G. S. 1941 Supp. 39-711.) The fact that the statute expressly declares that the state board may sue and be sued (G. S. 1941 Supp. 39-708k) and is silent on the same theme in respect to the county board, justifies an inference that such want of capacity for litigation was intended." (p. 211.)

The state department of social welfare realizes the effect of these decisions but points out that the present claim was made by the state department of social welfare and not by any county board, so that neither of those authorities is in point. The claim was presented upon the theory that public money fraudulently obtained may be recovered. The theory is that money fraudulently obtained is in the same category as money unlawfully paid out by officials acting in violation of law. The state board cites *Ritchie v. City of Topeka*, 91 Kan. 615, 138 Pac. 618. In that case Ritchie was a paving contractor. There was some question about his finishing a contract with the city for paving and as to some changes that were made in the contract. The city engineer made some estimates that were not in good faith, there were overcharges and the city paid them without knowledge of their fictitious character. The payments were voluntary, however. We held that the payments could be recovered in an action by the city. We stated:

"The rule as to voluntary payments has no application here. Money can not be regarded as voluntarily paid where payment was procured by fraud, or where the party paying it did not have full knowledge of all the material facts. Here, as we have seen, the claims were not only illegal, but the estimates on which they were based were not made in good faith. The city did not know that the claims presented by the contractors, and approved by the city engineer, included material not used and work not performed. The officers were dealing with public funds and had no authority to pay them out on illegal or fraudulent claims. Being unauthorized, the officers' act was void, and the payment made by them can not be treated as one made by or binding upon the city. Payments of municipal funds by public officers are not regarded as those made by individuals out of their own funds, and overpayments or other payments by public officers upon illegal demands against a municipality may be recovered back." (p. 624.)

A number of cases are cited to uphold the foregoing and there would seem to be no doubt about it.

To the same effect is *School District v. Community High School*, 126 Kan. 51, 267 Pac. 23. There money had been unlawfully paid by a school district for tuition. We held:

"The rule that money paid by mistake of law may not be recovered in an action brought for that purpose does not apply to unauthorized disbursements of public funds—as to these an action for their recovery is maintainable; and in the absence of some intervening equity the question whether the mistake in

disbursing them was one of law or one of fact is not of controlling importance." (Syl. ¶ 3.)

It will be noted that one of these actions was brought by the city of Topeka and the other was brought by a school district against another school district.

See 41 *Am. Jur.* 714, Poor and Poor Laws, sec. 44; *State, ex rel. State Social Security Comm. v. Butler*, 353 Mo. 14, 181 S. W. (2d) 768; and *State v. Guaranty Trust Co.*, 20 Wn. (2d) 588, 148 P. 2d 323.

We hold the money paid to Theodore Erwin upon fraudulent claims made by him to the county board of social welfare may be recovered by the state department of social welfare in a civil action from his estate because the county board of social welfare had no right to pay such money under the rule announced in the above cases.

We are now confronted with the question of whether or not the state department of social welfare has power to bring this action or to make this claim. The trial court remarked it had not been made a body corporate and that pursuant to the statute had power to sue upon contracts. In the first place, we have some holdings in Kansas to the opposite effect. There is a line of cases where we have held the state department of social welfare had power to recover the costs, and maintenance expenses of an inmate in a state institution. These claims were made under a statute providing that the expenses, maintenance and care of an inmate shall be paid by the guardian out of his estate and that the state may recover the per capita cost of the inmate from the estate of such inmate. In the case of *In re Estate of Dotson*, 154 Kan. 562, 119 P. 2d 518, we held that such a claim might be maintained generally but that in the instant case the claim was not made in time by the state board.

In *In re Estate of Colclazier*, 157 Kan. 125, 139 P. 2d 152, claim was made by the state department of social welfare to recover from the estate of the guardian of an inmate of a state institution. We held against recovery because a quarterly demand had not been made in conformity with the statute.

The two cases by inference are authority for a holding that the state board has power to make claims in probate court or to sue on a claim. The entire subject with which we are concerned is covered in comparatively recent statutes. The original provisions for social

welfare are in chapter 327 of the Laws of 1937. Section 3 of that act provides, in part, as follows:

"There is hereby created a state board of social welfare which shall be a body corporate with powers and duties hereinafter defined."

Section 8 (k) provides, in part, as follows:

"All contracts shall be made in the name of 'the state board of social welfare of Kansas,' and in such name the state board may sue and be sued on such contracts."

The language follows a number of subparagraphs which define the powers of the state board of social welfare to deal with county boards and with their agencies and to carry on the work generally of administering social welfare, a rather new field for the state at that time. Also in the same section we find subparagraph (v), which provides:

"The state board shall have authority and shall perform such other duties and services as may be necessary to carry out the functions of this act and promote social welfare in the state of Kansas, not inconsistent with state law."

We hold that the broad powers conferred upon the state board by the above sections includes the power to recover payments made on account of fraudulent claims and to make claims in the probate court therefor and to bring actions to recover. We are fortified in this somewhat by the language of section 8 of chapter 202 of the Laws of 1939, same being G. S. 1947 Supp. 75-3308. That language is as follows:

"The state board of social welfare provided for in section 39-703 of the General Statutes Supplement of 1937 is hereby abolished, and all of its properties and all the powers, duties, authority and jurisdiction now exercised by and imposed by law upon the state board of social welfare are hereby transferred to and imposed and conferred upon the state department of social welfare created under the provisions of this act and the state department of social welfare is hereby empowered and directed to do all things necessary for the proper exercise of all such powers, duties, authority and jurisdiction."

We see no reason for making a narrow construction of the above statutes in order to defeat the real purpose of the legislation, which was in fact to enable the state board to administer the social welfare program with a minimum of loss on account of fraudulent claims, to the end that the somewhat limited funds available might be spread out to relieve the needs of those of our less fortunate people who found themeselves in actual want.

The judgment of the trial court is reversed.

ARN, J., not participating.