No. 46,465

HELEN MOTT, Executor of the Estate of Frank Mott, Deceased, *Appellant,* v. DORRIS MITCHELL, THE STATE DEPARTMENT OF SOCIAL WELFARE, STATE OF KANSAS, THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF BARBER, THE COUNTY SOCIAL WELFARE BOARD OF BARBER COUNTY, KANSAS, *Appellees,* and HELEN MOTT, FRED L. MOTT, DEANNA MOTT WETZEL, DARLENE MOTT EMMELE, STEPHEN MOTT, A Minor, by Helen Mott, his Mother and Next Friend, and ROGER MOTT, A Minor, by Helen Mott, his Mother and Next Friend, *Appellants,* v. DORRIS MITCH-ELL, STATE DEPARTMENT OF SOCIAL WELFARE, STATE OF KANSAS, THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF BAR-BER, THE COUNTY SOCIAL WELFARE BOARD OF BARBER COUNTY, KANSAS, *Appellees.*

(496 P. 2d 1297)

W. *Luke Chapin*, of Chapin and Penny, of Medicine Lodge, argued the cause and was on the brief for the appellants.

*Jerry G. Elliott*, of Foulston, Siefkin, Powers and Eberhardt, of Wichita, argued the cause for Barber County, and *H. F. Fanning*, of Kahrs, Nelson, Fanning, Hite and Kellogg, of Wichita, argued the cause for the State Department of Social Welfare, and *Thomas L. McGuire*, of Medicine Lodge, and *Mikel L. Stout*, of Foulston, Siefkin, Powers and Eberhardt, of Wichita, were with them on the briefs for the appellees.

The opinion of the court was delivered by

PRAGER, J.: This appeal involves two consolidated actions seeking to recover damages for loss of earnings and wrongful death arising out of an automobile collision which occurred on August 8, 1968. On that day in the afternoon Frank Mott was killed when the tractor he was driving was struck in the rear by a car driven by Dorris Mitchell, the Barber County social welfare director. One of these actions is brought by Helen Mott as Executor of the estate of Frank Mott to recover damages under the survival act; the other action is brought by Helen Mott on behalf of herself and the other heirs of Frank Mott to recover damages under the wrongful death act. The State Department of Social Welfare of the State of Kansas, the Board of County Commissioners of Barber County and the County Social Welfare Board were joined as parties defendant in the case along with Dorris Mitchell. In the original petition the insurance carriers for the State of Kansas and for Barber County were also named as defendants but by agreement of the parties they were stricken from the action.

The State Department of Social Welfare filed a motion for summary judgment. A similar motion was filed by the Board of Commissioners of Barber County on behalf of the county and the Barber County Social Welfare Board. The district court sustained both motions. This appeal is from the order of the district court sustaining each of the motions for summary judgment.

The questions presented on this appeal do not involve issues of negligence, contributory negligence or damages. Specifically, what we are concerned with is whether or not the State Department of Social Welfare or the Board of Commissioners of Barber County

or the Barber County Social Welfare Board are liable to the plaintiffs on the theory of *respondant superior*, assuming the driver of the automobile, Dorris Mitchell, is liable to the plaintiffs.

In order to establish an evidentiary record as a basis for a ruling on the motions for summary judgment, the parties entered into a written stipulation as to the facts. For purposes of summary judgment the following facts are assumed to be true: At the time of the accident Dorris Mitchell was Director of Social Welfare of Barber County, Kansas, and she was engaged in carrying out her duties as director when the accident occurred. She owned the vehicle and received mileage pursuant to statute when driving her automobile on social welfare business. This mileage is paid from the Barber County social welfare fund which is derived from federal, state and county sources. The Great American Insurance policy insuring state employees and the Hartford Insurance policy insuring county employees were furnished to the court to be used as part of the evidentiary record on the motions. In addition to these stipulated matters it was agreed that the discovery deposition of Dorris Mitchell and the exhibits attached thereto could be considered by the court.

The deposition of Dorris Mitchell showed that she was appointed as director by the Barber County Social Welfare Board but that her appointment had been approved by the state department. Miss Mitchell testified that she was a state civil service employee with a designation of Welfare Director Class 1. She is paid with a voucher which is paid from the county welfare fund. Miss Mitchell testified that her Barber County supervisor was chairman of the county welfare board but that all problems have to be cleared through the field representative of the state department. There are various representatives from the state department in different fields of service such as child welfare, division of the blind, and vocational rehabilitation. In regard to Miss Mitchell's destination on the afternoon of the accident she testified that she was going to see an adoptive family, the O'Learys, to take their adoption papers which she had received from the State Department of Social Welfare and in addition she was going to see another lady about a wheelchair. These were the two cases she was working on at the time. She stated that she left her office at Medicine Lodge to go to Kiowa on these cases at about 3 or 3:30 p. m. Miss Mitchell stated categorically in her deposition that at the time of the accident she was on official busi-

ness for the State Department of Social Welfare and also for the Barber County welfare department. In regard to her relationship with the state department and the county welfare department she testified that as director of social welfare of Barber County she is under all the rules and regulations of the State Department of Social Welfare and has to carry out its policies that are established by law. As to control by the state department she testified that this is a gray territory because county directors of social welfare are employed under the civil service statutes and they have to abide by all of its rules and regulations. If she has any problems she discusses them with the state department field representative. All actions have to be cleared through the field representative. If she has a question she is advised by the state department how to handle it. If county welfare directors don't handle matters that away, the state department will have a hearing and the state department decides if the county does "this or that or whatever it is."

In connection with the deposition testimony of Miss Mitchell certain exhibits were introduced into evidence. Deposition exhibit No. 1 consisted of copies of state welfare department personnel forms pertaining to Dorris Mitchell at various stages of her career with the state department. Deposition exhibit Nos. 2, 3 and 4 were state department administrative regulations pertaining to county welfare personnel. Deposition exhibit No. 5 was the consent to adoption form that Miss Mitchell was taking to the O'Leary family at the request of the state department at the time the accident occurred. Deposition exhibit No. 6 was a certified copy of a petition for allowance of demand filed by the State Department of Social Welfare in the probate court of Barber County. This petition states that the County Board of Social Welfare of Barber County is a subordinate agency of the State Department of Social Welfare. The petition for allowance of demand seeks to recover against an estate of a decedent for assistance paid by the county board to the decedent during his lifetime. Deposition exhibit No. 7 was a letter dated August 6, 1968, from the state director of child welfare services to Dorris Mitchell as county director requesting her to deliver the original of the consent to adoption to Mr. and Mrs. O'Leary. The evidentiary matters discussed heretofore constitute the factual record on the basis of which the motions for summary judgment were determined by the district court.

At the time of the collision Dorris Mitchell carried personal liability insurance on her automobile which was limited to the amount of $10,000. The State of Kansas carried automobile liability insurance covering all state agencies including the State Department of Social Welfare. The applicable state policy was issued by the Great American Company and is in the total amount of $50,000 liability as to each person injured. At the time of the accident Barber County had obtained insurance from the Hartford Insurance Group providing insurance protection for the county and its employees in the amount of $25,000 liability as to each person. The claims contained in the two consolidated actions were in the total amount of $214,149.14. The basic issue to be determined on this appeal is whether Dorris Mitchell as Barber County Social Welfare Director was at the time of the collision an agent or employee of the State Department of Social Welfare or of Barber County so as to bring the plaintiffs within the umbrella of protection provided by the liability insurance policies issued by Great American and by the Hartford Insurance Group.

We first turn to the question whether or not Dorris Mitchell as County Welfare Director was an agent or employee of the State Department of Social Welfare at the time of the collision so as to bring her within the insurance coverage provided by Great American. Prior to 1957 the doctrine of governmental immunity insulated state agencies from liability for the tortious acts of their agents or employees where the agent or employee was engaged in an activity of a governmental nature. In 1957 the state legislature first enacted statutes which authorized the purchase of liability insurance where state motor vehicles were involved. In 1963 the statutes were amended to their present form. They were in effect at the time of the collision in the case at bar.

We should first direct our attention to the specific statutes which control the decision in this case. The statutes involved here are K. S. A. 74-4701, 74-4707, 74-4708 and 74-4709. These statutes provide as follows:

"74-4701. Definitions. As used in this act:

"(a) 'State agency' means any state office or officer, department, board, commission, institution, bureau or *any agency, division or unit within* any office, department, board, or other state authority. [Emphasis added.]

"74-4707. Purchase of motor vehicle liability insurance by state agencies; coverage, limitation. *Every state agency shall purchase motor vehicle liability* insurance for the protection and benefit of the state agency and the officers,

agents and employees of the state agency responsible for the operation of *vehicles owned, operated, maintained or controlled by the said agency,* and of persons while riding in or upon, entering or alighting from such vehicles. The motor vehicle liability insurance policy so purchased shall provide coverage to a limit, exclusive of interests and costs, of not less than twenty-five thousand dollars ($25,000) because of bodily injury to, or death of, one person in any one accident and, subject to the said limit for one person, to a limit of not less than fifty thousand dollars ($50,000) because of bodily injury to, or death of, two or more persons in any one accident, and, if the accident has resulted in injury to, or destruction of property to a limit of not less than five thousand dollars ($5,000) because of injury to, or destruction of, property of others in any one accident. The insurance purchased as provided for in this act shall be limited to the kinds of insurance hereinabove set out. [Emphasis added.]

"74-4708. Same; waiver of immunity, extent. The state agency securing insurance as hereinbefore required thereby waives its governmental immunity from liability for any damage by reason of death or injury to person or property proximately caused by the negligent operation of *any* motor vehicle by an officer or employee of such state agency when acting within the scope of his authority or within the course of his employment. Such immunity shall be waived only to the extent of the amount of insurance so obtained. [Emphasis added.]

"74-4709. Same; type of contract; coverage; waiver of defense of immunity. The contract of insurance purchased pursuant to this act must be one issued by some insurance company or association authorized to transact such business in the state of Kansas and must by its terms adequately insure such state agency, its officers, agents and employees under standard policies of insurance approved by the state insurance commissioner for the type of coverage provided for in section 2 [74-4707] of this act for any damages by reason of death, or injury to person or property, proximately caused by the negligent operation of *any* motor vehicle by an officer or employee of such state agency when acting within the scope of his authority or within the course of his employment. Any company or association which enters into a contract of insurance as above described with a state agency by such act waives any defense based upon the governmental immunity of the state agency and its officers, agents and employees." [Emphasis added.]

The appellee State Department of Social Welfare takes the position that Dorris Mitchell was not an agent or employee of the state department acting within the scope of her duties at the time the accident occurred. It is contended that the county welfare board, although a subordinate agency of the State Department of Social Welfare, is really an independent county board and there is nothing in the statute which shows the intent of the legislature to make employees of the county board employees of the State Board of Social Welfare. Specifically, it is urged that in Kansas a county

welfare director is hired by the county board of social welfare, is paid from county welfare funds and is therefore an employee of the county board of social welfare. The appellee further takes the position that the statutes heretofore cited were intended to provide insurance coverage only for motor vehicles *owned* by the state agency and that the statute is not broad enough to afford insurance protection for an automobile owned by an individual state employee receiving mileage for its use when performing state duties. The state department and its insurance carrier further contend that the insurance policy issued by Great American by its specific terms insures only state owned automobiles and did not cover the automobile owned and driven by Miss Mitchell in this case.

The trial court in its memorandum decision found that Miss Mitchell was not an employee of the state department at the time of the collision. The undisputed evidence was that at the time of the accident Miss Mitchell was on her way to Kiowa for the purpose of delivering to a family a consent for adoption at the request and on behalf of the state department. The court held that the bare request of the state department to Miss Mitchell to deliver the consent to the adoptive family and her compliance therewith did not clearly establish the legal relationship of principal and agent by which liability could be placed on the state department. The trial court also held that, conceding Miss Mitchell was an agent or employee of the state department, the Great American insurance policy was not applicable since her automobile was not at the time of the collision an "automobile owned, operated, maintained or controlled" by the state department.

On this point we hold that the trial court was in error in finding that Dorris Mitchell as county director of social welfare at the time of the collision was not an agent or employee of the State Department of Social Welfare and that her automobile was not protected by the Great American liability insurance policy. The evidence is undisputed that at the time of the collision Dorris Mitchell was the director of the Barber County Board of Social Welfare and that at the time of the collision she was acting in the scope of her employment and for its benefit. She was delivering an adoption paper at the specific request of the State Department of Social Welfare. At the time of the collision Dorris Mitchell was a state civil service employee. In her work she was supervised at all times by a field representative from the state department. Her

appointment as county welfare director was subject to approval by the state department.

We hold that the legal relationship between Dorris Mitchell as county welfare director and the State Department of Social Welfare is controlled by our decision in *Dellinger v. Harper County Social Welfare Board*, 155 Kan. 207, 124 P. 2d 513. In *Dellinger* we held that a county social welfare board is not an independent governmental entity but is a subordinate agency of the State Department of Social Welfare. The county social welfare board exercises its powers and duties according to the rules and regulations prescribed by the state board. It falls within the definition of "state agency" as contained in K. S. A. 74-4701 cited above. In that statute a state agency is defined as "any state office or officer, department, board, commission, institution, bureau or *any agency, division or unit within* any office, department, board or other state authority." In view of *Dellinger* it could not reasonably be denied that a county welfare board is an agency, division or unit within the State Department of Social Welfare. Hence it must follow that since Dorris Mitchell was an agent or employee of the Barber County Board of Social Welfare she was by that fact itself an agent or employee of the State Department of Social Welfare within the meaning of K. S. A. 74-4701, *et seq.*

The next question to be determined is whether the personal automobile of Dorris Mitchell was a motor vehicle within the provisions of K. S. A. 74-4707, 74-4708 and 74-4709. K. S. A. 74-4707 requires every state agency to purchase automobile liability insurance for the protection and benefit of the state agency and the officers, agents and employees of the state agency responsible for the operation of vehicles "owned, operated, maintained or controlled by the state agency." In the first place it should be noted that the statute is not restricted in its application to vehicles owned by the state agency. It also covers motor vehicles operated, maintained or controlled by the state agency. The application of the statute to any motor vehicles operated by state agents and employees acting within the scope of their authority is clearly shown when we examine the language in K. S. A. 74-4708 and 74-4709. Logically all of these statutes must be read together. K. S. A. 74-4708 provides that the state agency waives governmental immunity from liability for any damages caused "by the negligent operation of *any* motor vehicle by an officer or employee of such state agency when acting within

the scope of his authority or within the course of his employment." [Emphasis added.] Likewise, K. S. A. 74-4709 declares that the contract of insurance to be obtained by the state agency must insure the state agency and its agents and employees for any damages proximately caused "by the negligent operation of *any* motor vehicle by an officer or employee of such agency when acting within the *scope of his authority or within the course of his employment.*" [Emphasis added.] The purpose of the statute is to provide insurance protection not only for the state agency itself but also for its employees and for the traveling public who might be injured as a result of the negligent driving of state employees. Also the state department as an artificial being does not drive its motor vehicles; it must of necessity operate motor vehicles through its individual agents and employees. Under the undisputed facts in the case at bar it is clear that at the time of the collision Dorris Mitchell was an agent and employee of the State Department of Social Welfare and was operating a motor vehicle within the scope of her authority and within the course of her employment. The statutes cited above were clearly applicable and required state insurance coverage for Dorris Mitchell at the time of the collision in this case.

We next consider the question of whether or not the Great American insurance policy provided the statutory coverage to Dorris Mitchell in the case at bar. We hold that it did. Although the Great American policy does not specifically state that it provides liability insurance for non-owned motor vehicles of the state, an endorsement on the policy specifically refers to K. S. A. 74-4701 and 74-4707 to K. S. A. 74-4713 inclusive and declares that the insurance policy is to comply with those sections. Even if that endorsement were not included in the policy, the Great American policy must still provide the coverage required by K. S. A. 74-4709. In our recent decision in *Canal Insurance Co. v. Sinclair,* 208 Kan. 753, 494 P. 2d 1197, we held that where a policy of insurance is issued to an insured in compliance with the requirements of a statute, the pertinent provision of the statute must be read into the policy and no provisions of the policy in contravention of the statute can be given effect. Since the Great American policy was provided in compliance with the requirements of K. S. A. 74-4707 to 74-4713 inclusive, the provisions of those statutes are to be read into the policy and it must follow that the Great American policy in this

case provided insurance protection for Dorris Mitchell at the time the fatal accident occurred.

Did the trial court err in sustaining the motion for summary judgment filed on behalf of the Barber County Social Welfare Board? We hold that that motion was properly sustained by the trial court. We specifically held in *Dellinger v. Harper County Social Welfare Board*, supra, that a county social welfare board lacks the capacity to sue or to be sued. Hence it was not a proper party defendant in this case.

We turn now to a more difficult question. Was Dorris Mitchell an agent or employee of Barber County acting within the scope of her authority and for its benefit at the time of the collision? The trial court held that a county welfare director as an agent or employee of the county board of social welfare is also an agent or employee of the county and hence protected by county automobile liability insurance under the provisions of K. S. A. 12-2601, *et seq.* Prior to 1955 the municipalities of this state including counties had governmental immunity which protected them from motor vehicle tort liability. In that year the legislature enacted permissive legislation making it possible for the governing bodies of municipalities to purchase motor vehicle liability insurance to protect itself and its employees. Since Barber County purchased motor vehicle liability insurance for its employees it becomes important to determine whether or not Dorris Mitchell as Barber County Social Welfare Director was an employee of the county at the time of the collision in this case. We hold that Miss Mitchell as Barber County Social Welfare Director was not an employee of Barber County and that Barber County as such is not responsible for her negligent driving on the theory of *respondeat superior.* Hence the Hartford Insurance policy does not provide insurance coverage for Dorris Mitchell in this case.

We have held heretofore in this opinion that a county social welfare board is a subordinate agency of the State Department of Social Welfare. Under the provisions of K. S. A. 39-711 it is declared that the county social welfare board shall be the board of county commissioners of each county. The powers and duties of the county social welfare board are comprehensively regulated and controlled by the Kansas statutes and by rules and regulations promulgated by the State Department of Social Welfare. When all of the various statutes and rules and regulations are considered together we be-

lieve the conclusion to be inescapable that the county social welfare board is an agency of the state of Kansas not an agency of the county. K. S. A. 39-701 declares the public policy of the state to be to provide for an effective uniform system of welfare throughout the state to assist the counties in the financing of welfare work. The powers and duties of the state board are set forth in K. S. A. 1971 Supp. 39-708. Some of the provisions of this statute should be noted. The State Board of Social Welfare is given the power and duty to develop state welfare plans in cooperation with the federal government. The state department determines the general policies relating to all forms of social welfare of Kansas. The state board prescribes the standards of qualifications for the employees of the state and county boards. The state board supervises *all* social welfare activities of the county boards and the rules and regulations made by the state board are binding upon the county boards. Work projects and training programs are administered by the county board as the state board may direct. The state board is given the power to designate county boards or their employees as agents of the state board in the administration of property of any kind, including money given, advanced or granted to the state of Kansas for social welfare works. The county welfare board does not have the power to make contracts for welfare purposes. K. S. A. 1971 Supp. 39-708 (*k*) provides that all contracts shall be made in the name of "the state board of social welfare of Kansas," and in such name the state board may sue and be sued on such contracts. In subsection "*y*" of the statute the state board is given the power to develop a system of centralized payment of all or part of county welfare expenditures. When this is done welfare disbursements are made from the state social welfare fund rather than from the county welfare fund.

K. S. A. 1971 Supp. 39-713 sets forth the powers and duties of the county welfare board. The county welfare board is given the power to determine policy to a limited extent and to make rules and regulations, none of which may be inconsistent with state laws and the rules and regulations of the state board. In every subsection where power is granted to the county board it is "subject to the rules and regulations of the state board of social welfare." Subsection "*j*" of this statute provides that the county board shall prepare and submit to the state board a county welfare budget. The state board is required to examine the budget and to approve the same

or make recommendations and requirements as it shall deem advisable. The decision of the state board is final since the county board is required to correct the budget in accordance with the directions of the state board. Once the budget has been corrected the county board of social welfare is required to submit the same as corrected to the *board of county commissioners*. The statute declares it to be the duty of the *county commissioners* to make such levies on the taxable property of the county as is necessary to raise the funds required by the county welfare budget. We think it important to note the distinction made between the county welfare board and the board of county commissioners as separate entities in K. S. A. 1971 Supp. 39-713. It is obvious that the county welfare board is not acting in the same capacity as the county commissioners in welfare matters in view of the specific language of this statute.

The distinction is clearly made in other statutory provisions. Generally employees of the county welfare board are paid out of the county welfare fund. Under K. S. A. 1971 Supp. 39-713 (*m*) investigators of welfare, although appointed by the county board of social welfare, are paid compensation prescribed by the board of county commissioners and are paid from the county general fund. Welfare funds are handled differently than county monies. All disbursements from the county welfare fund must be made upon claims signed by the county welfare director and approved by the county welfare board. We think it also significant that claims against a decedent's estate for welfare assistance provided by a county welfare board are brought by the State Department of Social Welfare rather than by the board of commissioners of the county. (*Erwin v. Leonard,* 166 Kan. 630, 203 P. 2d 207.)

Regulations of the state department also emphasize the true nature of the county welfare board as an agency of the state rather than as an agency of the county. In K. A. R. 30-17-1 county social welfare boards are authorized to execute written contracts with the governing body of a political subdivision (including counties) for building or floor space in which to maintain the county welfare department. Rent may be paid out of the county welfare fund to the county treasurer for the use of such space in a courthouse. As pointed out heretofore, the contract for space must be made in the name of the State Department of Social Welfare. (K. S. A. 1971 Supp. 39-708 (*k*).) Obviously the county welfare board is a different entity from the county for it is inconceivable that an

agency could contract with itself. K. A. R. 30-17-2 provides that supplies and equipment purchased for the maintenance and operation of the county welfare department are to be paid from the county welfare fund and the title of such supplies and equipment is placed in the county social welfare board, not in the board of county commissioners.

In regard to the director of the county welfare department although he is appointed by the county welfare board the appointment is rigidly controlled by state board regulations K. A. R. 30-8-1 through 30-8-6. Increases in salaries of county welfare employees are controlled by state board regulation K. A. R. 30-8-9. The standards for caseloads and case supervisors are controlled by state department regulation K. A. R. 30-8-10. An appointment of any employee by a county board of social welfare not in compliance with civil service and state department rules and regulations will result in the withholding of state and federal participation in salary expense. (K. A. R. 30-8-11.) County welfare employees are subject to dismissal pursuant to state department regulations K. A. R. 30-8-13 and K. A. R. 30-8-14. Even the legal holidays for county welfare employees are specifically regulated by K. A. R. 30-8-15.

A thorough consideration of all of these statutes and state department regulations can lead to but one conclusion. The county welfare department is an arm of the State Department of Social Welfare and is not a department of the county. We hold that at the time of the automobile accident in this case Dorris Mitchell, as Barber County Social Welfare Director, was not a county employee responsible to the board of county commissioners of Barber County. Hence Barber County is not liable for her negligent driving on the theory of *respondeat superior*. The trial court was correct in sustaining the motion for summary judgment filed on behalf of the Board of County Commissioners of Barber County.

For the reasons set forth above the judgment of the trial court is affirmed insofar as it sustained the motion for summary judgment of the Board of County Commissioners of Barber County filed on behalf of itself and the Barber County Board of Social Welfare and entered judgment in their favor. The judgment of the trial court is reversed as to its order sustaining the motion for summary judgment filed on behalf of the defendant State

Department of Social Welfare. The case is reversed and remanded to the trial court court for further proceedings not inconsistent with this opinion.

SCHROEDER, J., dissents from Syllabus ¶ 5 and the corresponding portions of the opinion.

KAUL, J., (dissenting): I must respectfully dissent from the court's decision reversing the trial court's judgment in favor of the State Department of Social Welfare.

Limited time permits a statement of my views only in general terms. In my judgment the majority opinion extends the coverage contracted for between the State Department of Social Welfare and the Great American Insurance Company far beyond the terms of the policy, the intentions of the parties and the contemplation of the pertinent statutes.

There is nothing ambiguous about the policy. Automobiles covered are described therein as follows:

"ALL OWNED AUTOMOBILES AS DEFINED IN K. S. A. [74]-4701 (a) and 74-4707 to 74-4713 INCLUSIVE (SECTION 'G' THEREOF) PER CONTRACT 19040 IN COMPANY FILES"

We are informed, without contradiction, that the contract 19040, which is made a part of the policy by reference, contains an itemized invoice from the State Department of Social Welfare which listed the number and location of passenger cars to be included in the policy. A policy endorsement also provided coverage for vehicles which might be acquired during the policy period. The coverage under the policy is clearly set out.

This case is not the usual unilateral contract situation wherein the rule of liberal construction is applied. This policy was issued to meet the requirements of the state; the coverages and limitations thereon were clearly defined and the policy was accepted by the state and the premium paid on those conditions.

The policy, of course, incorporates by reference to the statutes, the provisions of K. S. A. 74-4701, 74-4707 to 74-4713, inclusive. Briefly, automobiles to be insured are designated by 74-4707 as "vehicles owned, operated, maintained or controlled by the said agency." The terms relate to the agency not to an employee of the agency. The interpretation of the statutes so as to extend the

coverage to any automobile owned, borrowed or rented by an agency while operating in the course of his employment puts a tremendous, if not impossible, task on an underwriter to calculate a premium for the coverage of such a risk, which will actually have to be based on the number of employees rather than on the number of automobiles owned or controlled by the agency. The effect of the court's interpretation of the statutes may well be to foreclose the acquisition of insurance by a state agency. Certainly, the coverage of such a risk was not intended by the parties to this contract of insurance, nor was it, in my opinion, contemplated by the legislature. This court has no right to enlarge the scope of a statute nor to amend it by judicial interpretation. (*Schroder v. Kansas State Highway Commission,* 199 Kan. 175, 428 P. 2d 814.)

It may be argued with merit that a state agency should assume full responsibility for liability coverage of all of its employees while operating any automobile in the course of their employment. If such a policy is to be adopted it should be accomplished by specific legislative declaration, followed by the negotiation of a contract of insurance which provides such coverage.

I would affirm the judgment of the trial court.

FONTRON and FROMME, JJ., join in the foregoing dissenting opinion.