No. 46,447

Lena B. Allen, *Appellant,* v. City of Ogden, Kansas, *Appellee.*

(499 P. 2d 527)

Opinion filed July 19, 1972.

*Robert K. Weary,* of Junction City, argued the cause and was on the brief for appellant.

*John F. Stites,* of Manhattan, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

Fatzer, C. J.: The appellant, Lena B. Allen, commenced this action against the City of Ogden, Kansas, a municipal corporation, alleging that agents of the city conspired to use excessive force in

her arrest for double-parking, and that subsequent harassment by public authorities has caused her irreparable physical and mental anguish. The petition sought actual damages of $60,000 and punitive damages in a like amount. It should be noted that neither the officer who made the arrest, the mayor, nor any of the members of the city council of Ogden were made party defendants to this action.

The substance of the appellant's claim is stated in her petition, and pertinent allegations therein are quoted:

"3. That as indicated in said claim, on or about Wednesday, October 22, 1969, the plaintiff, LENA B. ALLEN, asked Mr. R. G. Schultz of the Ogden police force to move his police vehicle from the entrance to her grocery store in Ogden; that her request apparently made him angry as he proceeded immediately to confer with the Mayor of Ogden, Mrs. Geneva Crosby; that apparently acting under instructions from said mayor, he soon returned, obtained the amount of the City's account owed to the store and left indicating he would be right back; that apparently still acting under instructions from said Mayor, he promptly returned and paid off the City's account at the plaintiff's grocery store indicating there would be no further purchases; that the following Saturday night, on or about the 25th day of October, 1969, the plaintiff as she left her store with two of her clerks was followed and stopped by Mr. Schultz purportedly to check her driver's license; that after having done so, he followed her continuously to the places where she discharged the two clerks from her automobile and at the last of the two places after she had carried some groceries into the house of one Mrs. Blueheart, the said Mr. Schultz immediately followed her to the porch of the house demanding that she come out so that he could give her a ticket for double parking; that the plaintiff indicated she would do so as soon as she had unloaded the groceries for Mrs. Blueheart; that, thereupon, said policeman, R. G. Schultz, without any authority whatsoever, unlawfully burst into the house in a violent rage, seized the plaintiff by the arm and dragged her bodily out of the house at the same time removing his mace from its container on his belt and threatening to use the same on plaintiff; that said policeman in grabbing the plaintiff by her left arm caused her right arm and wrist to come in contact with the door jamb, which hand and wrist had recently been operated on at the Mayo Clinic because of a carpal tunnel syndrome, to relieve nerve pressure on her wrist; and that furthermore, in the course of removing the plaintiff from the house she was forced or pushed up against the door."

. . . . . . . . . . . . .

"5. That said actions and harassment of the policeman, were made known to the Mayor, Mrs. Geneva Crosby, and the other members of the City Council of the City of Ogden, Kansas, but that no corrective action was taken or said policeman restrained in any way; that subsequently, said harassment continued, the said policeman from time to time following the plaintiff around in a very threatening and peculiar manner; that because of his extreme temper and strange behavior, plaintiff experienced a great deal of fear and apprehension; that said continued conduct and harassment was repeatedly brought to the

attention of said City officials, including the Mayor and the members of the City Council, but that said policeman was not relieved of his position or restrained in any way."

.    .    .    .    .    .    .    .    .    .    .    .    .

"8. That prior to October 25, 1969, the Mayor and City Council of the City of Ogden, Kansas, knew, had reason to know or should have known of the violent and extreme propensities of said R. G. Schultz, and nevertheless continued to allow him to act in his capacity as police officer of Ogden, Kansas.

"9. That the continuing course of conduct and acts herein described were committed by agents of the defendant city; and that they were unlawful, illegal, willful, wanton acts of which the city officials of the City of Ogden, Kansas, knew or should have known and were and have been continued."

The city filed a motion to dismiss the action upon the ground the petition failed to state a claim upon which relief may be granted. After hearing arguments and giving consideration to the briefs of council, the district court sustained the motion. The appellant has appealed, asserting three grounds for reversal.

It is first contended the district court erred in sustaining the city's motion to dismiss the action since the "judge-made" doctrine of immunity of cities from suit for torts committed by city employees in the exercise of governmental activities should be abolished by this court. The appellant cites and relies upon *Carroll v. Kittle*, 203 Kan. 841, 457 P. 2d 21, where this court abolished the right of the state and its governmental agencies to claim immunity for the negligence of its employees or agents engaged in proprietary activities. The point is not well taken. *Carroll* recognized the authority of the Legislature to control the entire field of governmental immunity, including matters covered by judicial decision. (Syl. ¶ 4.) However, the effect of *Carroll* was of short duration, and as stated in *Woods v. Kansas Turnpike Authority*, 205 Kan. 770, 472 P. 2d 219, the Session of the Legislature following the filing of the opinion in that case, enacted Chapter 200, Laws of 1970, now appearing as K. S. A. 1971 Supp. 46-901 *et seq.* While the provisions of Section 2 of that Act (K. S. A. 1971 Supp. 46-902) do not apply to or change the liability of local units of government as established by our judicial decisions, such as cities of the state, the same Session of the Legislature enacted Chapter 318, Laws of 1970, now appearing as K. S. A. 1971 Supp. 74-4714 *et seq.* That Act was effective July 1, 1970, and Section 2 (K. S. A. 1971 Supp. 74-4715) authorizes the procurement of insurance by any city for the purpose of insuring the city, its officers, employees and agents against any liability for injuries or damages resulting from any tortious conduct of its officers,

employees and agents arising out of the course of their employment. Section 3 (K. S. A. 1971 Supp. 74-4716) provides that the procurement of such insurance constituted a waiver of the city's governmental immunity from liability for injuries and damages resulting from such tortious conduct to the extent of the insurance so obtained. A corresponding statute (K. S. A. 74-4707 *et seq.*) requiring every state agency to purchase automobile liability insurance for the protection and benefit of the state agency, its officers, agents and employees responsible for the operation of any motor vehicle by such persons within the scope of their employment, and the traveling public, was construed in *Mott, Executor v. Mitchell,* 209 Kan. 476, 496 P. 2d 1297, and it was said the provisions of the statute waiving governmental immunity are to be read into the policy.

In the instant case, the tortious conduct was alleged to have occurred on October 25, 1969, at a time when the provisions of K. S. A. 1971 Supp. 74-4714 *et seq.* were not enacted or effective, and we must look to the law of this state applicable on October 25, 1969, to determine this litigation.

The rule of governmental immunity in this state is very clear. It has been repeatedly stated. Without exception, this court has held that the enforcement of police power is a governmental function so as to afford to municipalities the cloak of governmental tort immunity. (*Wommack v. Lesh,* 180 Kan. 548, 305 P. 2d 854; *Gardner v. McDowell,* 202 Kan. 705, 451 P. 2d 501; *Daniels v. Kansas Highway Patrol,* 206 Kan. 710, 482 P. 2d 46.) Contentions made in this case to the effect the doctrine should be abolished are very similar to those previously asserted, and this court sees no reason why they should not be rejected again. It is sufficient to say we adhere to the rule announced in the *Gardner* and *Daniels* cases that the operation of a police department by a city is a governmental function, and that enforcement of the police power by police officers of a city is within the scope of governmental immunity from suit.

The appellant seeks to avoid the effect of the doctrine of governmental immunity upon the theory of nuisance, as an exception to the general rule. This court had occasion to consider the merits of such an argument in *Wommack* and *Gardner,* supra. We held that such actions by police officers would not constitute a nuisance so as to nullify the application of the doctrine.

A nuisance is an annoyance, and any use of *property* by one which gives offense to or endangers life or health, violates the laws of

decency, unreasonably pollutes the air with foul noxious odors or smoke, or obstructs the reasonable and comfortable use and enjoyment of the property of another, may be said to be a nuisance. In *Caywood v. Board of County Commissioners*, 200 Kan. 134, 434 P. 2d 780, this court cited numerous examples of property used so as to constitute a nuisance. (1. c. 141-143.) We find no analogy of the facts alleged that would justify a conclusion the actions complained of would constitute a nuisance so as to place this case within the exception.

Lastly, the appellant contends the district court erred in sustaining the appellee's objections to interrogatories, the purpose of which was to ascertain whether the municipality had insurance coverage for the circumstances as alleged in the petition.

In *Smith v. Board of Education*, 204 Kan. 580, 464 P. 2d 571, this court held that governmental immunity was not waived by the purchase of liability insurance. Moreover, it was stated the Legislature only has the authority to waive such immunity, and that immunity could never be waived or surrendered by inference or implication. In the opinion it was said:

"The appellant next contends that the trial court erred in not ruling that the purchase of a certain . . . policy of insurance . . . constituted a waiver of governmental immunity.

"We cannot agree. The immunity of the state from actions for tort arising out of the performance of governmental functions extends to its governmental agencies. (*Smith v. Higgins,* 149 Kan. 477, 87 P. 2d 544.) *Only the legislature has the authority to waive this immunity. There must be express statutory waiver before the state or its agencies may be subject to suit while operating in a governmental capacity.* (*Purity Oats Co. v. State,* 125 Kan. 558, 264 Pac. 740.)

"Such immunity from suit is never waived or surrendered by inference or implication. *Construction Co. v. Board of Administration,* 105 Kan. 291, 182 Pac. 386.) That which governmental agencies cannot do directly they should not be permitted to do indirectly. Permitting such agencies to waive governmental immunity by simply taking out insurance would be the equivalent of permitting a direct waiver. The appellant cites a limited number of cases from foreign jurisdictions which she claims are to the effect that the procurement of insurance is a waiver of immunity. Be that as it may, such a ruling is not in harmony with the rule announced in our decisions as to the waiver of immunity." (1. c. 585.) (Emphasis supplied.)

Subsequently, as noted above, the Legislature enacted K. S. A. 1971 Supp. 74-471 *et seq.* providing that a municipality and other political subdivisions may procure liability insurance to insulate it, its agents, and employees from liability while within the scope of

their employment, and that by purchasing the insurance, the municipality or other political subdivision waives the governmental doctrinal immunity. (K. S. A. 1971 Supp. 74-4716.)

As indicated, the appellant alleged she was falsely arrested on October 25, 1969, some eight months prior to the effective date of the statute in question. There are ancillary, vague, and conclusory statements that the appellant's injury was of a continuing nature because of subsequent harassment, but no factual basis for the continuing injury is alleged. The crux of the claim is the alleged false arrest and use of excessive force in October of 1969.

It is a rule of law of this state that statutes do not operate retroactively, but operate prospectively, unless there is an intention of the Legislature clearly expressed by the statute that the provisions are to be applied with retrospective effect. (*Jones v. Garrett,* 192 Kan. 109, 386 P. 2d 194; *State v. Cramer,* 196 Kan. 646, 413 P. 2d 994; *Davis, Administrator v. Union Pacific Railway Co.,* 206 Kan. 40, 476 P. 2d 635.) We find no legislative intent that K. S. A. 1971 Supp. 74-4714 *et seq.* was intended to have retrospective effect, and conclude the statute has prospective operation only.

We adhere to our holding in *Smith,* supra, and conclude that the existence of insurance coverage, prior to the effective date of K. S. A. 1971 Supp. 74-4714 *et seq.* would have no bearing on the viability of governmental immunity as a defense. The district court did not err in sustaining the objections to interrogatories.

This court is of the opinion the actions complained of by the appellant do not state a claim for which relief may be granted and the district court did not err in sustaining the appellee's motion to dismiss.

The judgment is affirmed.