(715 P.2d 1045)

No. 57,512

STATE OF KANSAS *ex rel.* SECRETARY OF SOCIAL AND REHABILITATION SERVICES, *Appellee*, v. EVELYN F. FOMBY and CALVIN W. FOMBY, *Appellants.*

Opinion filed March 20, 1986.

*Carol L. Boorady,* of Legal Aid Society of Wichita, Inc., for the appellant Evelyn Fomby.

*Robert L. Mitchell,* of the Law Offices of Robert L. Mitchell, of Wichita, for the appellant Calvin Fomby.

*Robert R. Hiller, Jr.,* of Wichita, for the appellee.

Before ABBOTT, C.J., RICHARD W. WAHL, District Judge, assigned, and FREDERICK WOLESLAGEL, District Judge Retired, assigned.

ABBOTT, C.J.: The defendants, Evelyn F. Fomby and Calvin Fomby, appeal from a judgment against them for actual and punitive damages. The action was instituted by the State of Kansas *ex rel.* the Secretary of Social and Rehabilitation Services (SRS) for fraud and recovery of overpayment of public assistance, of food stamps, and of benefits under the Aid to Families with Dependent Children Program (AFDC).

SRS asserted two causes of action against Evelyn Fomby: recovery of overpayments of public assistance as authorized by K.S.A. 39-719b and fraud. The remaining cause of action was asserted against Calvin Fomby for aiding and abetting in the commission of fraud.

The trial court found that Evelyn had failed to report a change of circumstances and that there was a lack of deprivation of parental support, making Evelyn ineligible for assistance. In addition to actual damages for recovery of overpayment for the period October 1, 1981, through February 28, 1983, totaling $7,230, punitive damages were assessed against each defendant in the amount of $2,500.

Calvin's liability in this case is premised solely upon a fraud theory. He was not the recipient of, or applicant for, public assistance. The statutory action authorized by K.S.A. 39-719b is irrelevant insofar as Calvin is concerned. Calvin contends that an aiding and abetting offense is criminal in nature and affords no basis for civil fraud liability. We agree. The aiding and abetting language on which the trial court relied was apparently drawn from K.S.A. 39-720, the provision expressly recognizing criminal liability for welfare fraud. See *State v. Ambler*, 220 Kan. 560, 552 P.2d 896 (1976).

As we view this case, even assuming that SRS is authorized to bring a common-law action for fraud, the evidence is wholly lacking to support the trial court's findings and conclusions as they relate to Calvin. Actionable fraud includes an untrue statement of fact, known to be untrue by the party making it, made with the intent to deceive or recklessly made with disregard for the truth, where another party justifiably relies on the statement and acts to his injury. *Scott v. Strickland*, 10 Kan. App. 2d 14, 691 P.2d 45 (1984). Fraud may encompass anything calculated to deceive, including all acts, omissions, and concealments involving a breach of legal or equitable duty and resulting in damage to

another. *Goben v. Barry,* 234 Kan. 721, 676 P.2d 90 (1984). The alleged fraud in this case lies in the failure to report a change in circumstances, namely the possession of resources which rendered the recipient ineligible for assistance (checking account, Calvin's unemployment compensation checks). At the outset, Calvin Fomby was not the recipient of or applicant for public assistance. Moreover, there is no evidence to indicate that Calvin had any knowledge of the content of the assistance forms filled out by Evelyn. He did not, therefore, make an untrue statement of fact with knowledge thereof. The trial court's finding that Calvin was aware that Evelyn was a recipient of public assistance does not prove fraud. And when fraud must be proven by clear and convincing evidence, this case wholly fails to satisfy that standard as to Calvin. *Nordstrom v. Miller,* 227 Kan. 59, 605 P.2d 545 (1980).

The judgment against Calvin is reversed and remanded with directions to vacate the judgment as to Calvin.

The trial court assessed $2,500 in punitive damages, finding Evelyn committed fraud in receiving public assistance overpayments. Evelyn contends that the SRS has no statutory authority entitling the State to recover punitive damages.

An argument can be made that K.S.A. 39-720 gives authority for an action for punitive damages. Evelyn argues that the SRS, as an administrative agency, is a creature of statute which has only those powers which are conferred by statute, either expressly or by implication. Here, there is no statutory authority for the SRS to maintain a common-law fraud action; therefore, an award of punitive damages was erroneous. Evelyn relies on K.S.A. 39-719b, which limits the SRS's recovery to recoupment of the overpayment, and K.S.A. 39-720, which is confined to criminal liability. Finally, Evelyn cites *Woods v. Midwest Conveyor Co.,* 231 Kan. 763, 648 P.2d 234 (1982), in support of her argument. The holding of *Woods* is that the Kansas Commission on Civil Rights, an administrative agency, has no statutory authority to order awards for pain, suffering, and humiliation or for punitive damages.

The SRS counters with several arguments. First, nowhere in the statutory provisions is an award of punitive damages specifically prohibited. Moreover, because the statute (K.S.A. 39-719b) does not define the type of action to be used to recoup over-

payments, by implication, a common-law fraud action may be maintained. In addition to case law from foreign jurisdictions, the SRS claims support from a decision rendered by this court, *U.S.D. No. 490 v. Celotex Corp.*, 6 Kan. App. 2d 346, 629 P.2d 196, *rev. denied* 230 Kan. 819 (1981), in which it was held that a political corporation can avail itself of any legal remedy or any form of action that would be available to a private suitor under similar circumstances. Finally, the SRS argues that the trial court was merely giving effect to the legislative intent of the statute by awarding punitive damages for fraudulent activity by a participant in the public assistance programs. Kansas statutes do not expressly provide for a common-law fraud action for punitive damages by the SRS. Hence, if the statutes authorize a fraud action, it must be by implication.

The legal principle is well established that administrative agencies are creatures of statute and their power is dependent upon authorizing statutes; therefore, any exercise of authority claimed by the agency must come from within the statutes either expressly or by clear implication. There is no general or common-law power that can be exercised by an administrative agency. *Pork Motel, Corp. v. Kansas Dept. of Health & Environment*, 234 Kan. 374, 378, 673 P.2d 1126 (1983); *Woods v. Midwest Conveyor Co.*, 231 Kan. at 770; 1 Am. Jur. 2d, Administrative Law § 70, p. 866.

The statutes which address the public assistance system, including the AFDC (Aid to Families with Dependent Children) program, are found at K.S.A. 39-701 *et seq.* The powers of the SRS, when overpayments because of a recipient's fraudulent act or ineligibility are involved, are limited to two statutory provisions: K.S.A. 39-719b and K.S.A. 39-720. Those provisions provide as follows:

"**39-719b. Duty of recipient to report changes which affect eligibility; actions by secretary; recovery of assistance obtained by ineligible recipient.** If at any time during the continuance of assistance to any person, the recipient thereof becomes possessed of any property or income in excess of the amount ascertained at the time of granting assistance, or if any of the recipient's circumstances which affect eligibility to receive assistance change from the time of determination of eligibility, it shall be the duty of the recipient to notify the secretary immediately of the receipt or possession of such property, income, or of such change in circumstances affecting eligibility and *said secretary may, after investigation, cancel or modify the assistance payment in accordance with the circumstances.*

"*Any assistance paid shall be recoverable by the secretary as a debt due to the state.* If during the life or on the death of any person receiving assistance, it is found that the recipient was possessed of income or property in excess of the amount reported or ascertained at the time of granting assistance, and *if it be shown that such assistance was obtained by an ineligible recipient, the total amount of the assistance may be recovered by the secretary* as a fourth class claim from the estate of the recipient or *in an action brought against the recipient while living.*" (Emphasis supplied.)

"**39-720. Penalty relating to fraudulent acts; civil actions, evidence.** Any person who obtains or attempts to obtain, or aids or abets any other person to obtain, *by means of a willfully false statement or representation,* or by impersonation, collusion, *or other fraudulent device,* assistance to which the applicant or client is not entitled, *shall be guilty of the crime of theft, as defined by K.S.A. 21-3701;* and he shall be required to remit to the secretary the amount of any assistance given him under such fraudulent act. *In any civil action for the recovery of assistance on the grounds the assistance was fraudulently obtained,* proof that the recipient of the assistance possesses or did possess resources which does or would have rendered him ineligible to receive such assistance shall be deemed prima facie evidence that such assistance was fraudulently obtained." (Emphasis supplied.)

K.S.A. 39-719b authorizes a recoupment action by the SRS such as was initiated in the instant case. This would appear to be solely a statutory action. The language of the statute indicates that the action requires a showing that the recipient was ineligible for assistance in order to recover the assistance paid. The statute further empowers the SRS to cancel or modify assistance payments when a change in eligibility is discovered or reported. This statute does not, however, authorize punitive damages. The remedy is confined to recouping the amount of the assistance.

An argument can be made that K.S.A. 39-720 gives authority for an action for punitive damages. The legislature recognized the option of prosecuting recipients for theft where they fraudulently obtained public assistance overpayments. However, as the statute's heading indicates, it also deals with civil actions. The statute's language provides: "In *any civil action* for the recovery of assistance *on the grounds the assistance was fraudulently obtained . . . .*" Although the statute continues on to create an evidentiary presumption, at least implicitly, various civil actions may be maintained when overpayments are fraudulently obtained. If the only civil action available to the SRS was the recoupment provision (K.S.A. 39-719b), the use of "any civil action" is overly broad. The statute could simply have stated: "In any action brought pursuant to K.S.A. 39-719b." It could be

argued it is inherent by the language employed and the separate statutes that K.S.A. 39-719b is not limited to overpayment situations where fraud is involved and that K.S.A. 39-720 is confined to the SRS's remedies when fraudulent overpayments are involved, be they criminal or civil in nature. In nonfraud situations, it would appear the SRS is limited to recoupment pursuant to K.S.A. 39-719b. There it can be argued that when overpayments are fraudulently obtained *any* civil action is authorized that may be appropriate to the circumstances.

The Kansas case law does not aid the conclusion that a common-law fraud action, by implication, may be brought by the SRS. The decisions cited by SRS are all distinguishable. As pointed out by defendants, *U.S.D. No. 490 v. Celotex Corp.*, 6 Kan. App. 2d at 357, is to no avail to the SRS's position. The rule in *Celotex*, that a political corporation can avail itself of any legal remedy or any form of action that would be open to a private suitor, is inapplicable here. The SRS is not a political corporation but an administrative agency. And the decision upon which the defendants rely, *Woods v. Midwest Conveyor Co.*, 231 Kan. 763, can also be distinguished. In *Woods*, the administrative agency (KCCR) made an award of compensatory damages for pain and suffering for discrimination. The statutory authority pertaining to the KCCR does not include an award of compensatory damages among its remedial orders. K.S.A. 44-1001 *et seq.* The KCCR's administrative regulations, which purportedly authorized compensatory and punitive damage awards, were held by the Kansas Supreme Court to be void, as beyond the authority conferred upon the KCCR by statute. Moreover, there are numerous decisions from other jurisdictions which do not permit recovery of punitive damages in antidiscrimination suits.

The remaining two Kansas cases can also be distinguished on their facts. *In re Estate of Butler*, 159 Kan. 144, 152 P.2d 815 (1944), was an action to establish a claim against the estate of a welfare recipient to recover assistance paid out. The county welfare board tried to bring the civil proceeding under the earlier version of K.S.A. 39-720. The Kansas court held that G.S. 1935, 39-720 (1943 Supp.) afforded no ground for relief in a civil proceeding since it was purely a penal statute. The statute, as it appeared at that time, did not contain the language found in the present version referring to "any civil action" when fraud is

involved. At the time *Butler* was decided, K.S.A. 39-719b did not even exist. Moreover, the question of punitive damages was not even addressed. The county board was only seeking to recover the overpayments.

*Erwin v. Leonard,* 166 Kan. 630, 203 P.2d 207 (1949), also decided prior to the enactment of the recoupment statute, K.S.A. 39-719b, recognized the power of the State Board of Social Welfare to recover payments on account of fraudulent claims. The Kansas Supreme Court found such power inherent in the State Board's duties to carry out and promote social welfare in the state. The court noted: "We see no reason for making a narrow construction of the above statutes in order to defeat the real purpose of the legislation, which was in fact to enable the state board to administer the social welfare program with a minimum of loss on account of fraudulent claims . . . ." 166 Kan. at 635. Although it is not precisely clear what type of action would be permitted, the case clearly allows a civil proceeding (other than a statutory action) to recover assistance fraudulently obtained. Unfortunately, the case did not address the availability of punitive damages because no attempt to recover them was pursued by the State Board of Social Welfare. See also *In re Estate of Ward,* 176 Kan. 614, 272 P.2d 737 (1954); *Redding v. Burlington Cty. Welf. Bd.,* 65 N.J. 439, 323 A.2d 477 (1974) (the county welfare board has inherent power to bring civil action to recover overpayments to welfare recipients in administering the AFDC program; punitive damages was not an issue in this case). Finally, the case which appears to be based on the common-law theory of fraud sought only a recovery of the overpayments. No issue with respect to punitive damages was raised. See *Utah State Dept. of Soc. Serv. v. Pierren,* 619 P.2d 1380 (Utah 1980).

In summary, we conclude that in the absence of specific statutory authority the SRS cannot maintain an action for punitive damages.

The trial court found that the defendant Evelyn Fomby was a recipient of public assistance from October 1, 1981, through February 28, 1983. The court further found that during this period there was a change in circumstances which would affect Evelyn's eligibility for assistance and that her children were not deprived of parental support during this period by reason of the defendant father's continued absence from the home. Evelyn

was ordered to repay the overpayments of public assistance received during the entire period.

Evelyn's contention on appeal is that these findings are not supported by the evidence for a portion of the period in question in which she received assistance, June 1, 1982, through October 31, 1982. Evelyn argues that during this limited five months in 1982 she was entitled to AFDC assistance because the children were deprived of support, since no unemployment compensation was received from the children's father. Furthermore, she argues that the children were deprived of parental support by reason of their father's absence from the home during this period. The gist of her argument is that the SRS must show her ineligibility for the entire period in order to recover all assistance she received during this period.

The relevant provisions, when applied to the facts of this case, will determine whether we have "dependent children," as that term is defined, making Evelyn eligible for AFDC assistance. The Kansas provisions are substantially the same as their federal counterparts. K.S.A. 1985 Supp. 39-702(g) [42 U.S.C. § 606(a) (1982)] defines dependent children as follows:

"(g) 'Dependent children' means *needy children under the age of 18*, or who are under the age of 19 and are full-time students in secondary schools or the equivalent educational program or are full-time students in a program of vocational or technical training if they may be reasonably expected to complete the training before attaining age 19, *who have been deprived of parental or guardian support or care by reasons of* the death, *continued absence from the home*, or physical or mental incapacity of a parent or guardian . . . ." (Emphasis supplied.)

Both parties agree that the "deprivation of parental support by reason of continued absence of a parent" is the eligibility question in issue here. It is the application of this language upon which the parties disagree. The regulations extend further and determine the requisites for what constitutes a "continued absence." K.A.R. 30-4-73(b) [45 C.F.R. § 233.90 (c)(1)(iii) (1985)] provides:

"(b) Continued absence from the home. Continued absence from the home of either or both natural or adoptive parents shall be established as a basis for ADC when the parent is *physically absent* from the home *and* the *absence interrupts or terminates the parent's functioning as a provider* of maintenance, physical care, or guidance for the child. Absence of a parent based solely on active military service shall not constitute deprivation under this provision." (Emphasis supplied.)

As the regulation clearly defines a "continued absence," a mere physical absence is insufficient to establish a deprivation of parental care and thereby create eligibility for AFDC. The absence must, in addition, interrupt or terminate the parent's ability to give physical care, guidance, or maintenance.

The trial court determined that Calvin Fomby was not an absent parent and, therefore, Evelyn was ineligible for AFDC.

While the evidence is conflicting, there is substantial competent evidence in the record to support the trial court's finding that Calvin Fomby was not an absent parent and further that Evelyn had concealed not only a checking account, but two savings accounts from SRS. Clearly, Evelyn had a statutory duty to report these accounts (K.S.A. 39-719b), and the record amply supports that she was so advised and failed to reveal this information in monthly reports that were filed with SRS. If the unreported change makes a recipient ineligible for assistance, the benefits may be cancelled and recovered from the recipient. The record in this case is borderline as to the five-month period from June to October of 1982. We are satisfied, however, that when the record is considered as a whole, the trial judge did not commit reversible error in allowing recovery for that period of time.

Affirmed in part and reversed in part.