(814 P.2d 970)

No. 65,950

JUDITH ANN GOLAY, *Appellee,* v. KANSAS STATE BOARD
OF NURSING, *Appellant.*

Opinion
filed June 28, 1991.

*Diane M. Glynn,* assistant attorney general, and *Robert T. Stephan,* attorney general, for appellant.

*Eugene T. Hackler,* of Hackler, Londerholm, Hinkle, Corder, Martin & Hackler, Chtd., of Olathe, for appellee.

Before BRAZIL, P.J., RULON, J., and DAVID S. KNUDSON, District Judge, assigned.

BRAZIL, J.: The Kansas State Board of Nursing (the Board) appeals from the trial court's determination that the Board lacked jurisdiction to conduct disciplinary proceedings against Judith Ann Golay because no sworn complaint had been issued against Golay. We reverse and remand.

The parties have appealed on stipulated facts pursuant to Rule 3.05 (1990 Kan. Ct. R. Annot 17), and those facts need not be repeated here at length since the sole issue before us is a question of law.

The unsworn complaint against Golay was filed with the Board by the administrator of the nursing home where Golay was employed as director of nursing services. Two investigations followed the complaint, after which Golay was notified that 16 charges had been filed against her and that a hearing date had been set. Golay filed a motion to dismiss, arguing the Board lacked jurisdiction because a sworn complaint had never been issued against her as required by K.S.A. 1990 Supp. 65-1120(b). The hearing officer assigned to the case denied the motion; subsequently, a Board investigator signed a sworn complaint against Golay. Two hearings were held; by the time they were concluded, 15 of the charges against Golay had been dropped. The Board found Golay guilty of diverting Demerol and mischarting and falsifying patient records and suspended her license until she completed a refresher course.

Golay's petition to the Board for reconsideration was denied, and a final order was entered. Golay appealed to the district court and renewed her motion to dismiss on jurisdictional grounds because the Board began its investigation before a sworn complaint was filed. The district court ruled in Golay's favor and reversed the Board's decision on the jurisdiction issue, and the Board appeals.

The trial court ruled that K.S.A. 1990 Supp. 65-1120(b) requires a sworn complaint be filed before the Board can investigate nurses' conduct. The Board argues K.S.A. 1990 Supp. 65-1120(b) merely mandates that it conduct an investigation when a sworn complaint is filed, but does not preclude the Board from instituting investigations on its own or upon receipt of an unsworn complaint. Golay argues the wording of K.S.A. 1990 Supp. 65-1120(b) is plain and the legislature's intent is clear and no investigation of alleged offenses listed in K.S.A. 1990 Supp. 65-1120(a) can begin without the filing of a sworn complaint.

K.S.A. 1990 Supp. 65-1120(b) states in relevant part:

"Upon filing of a sworn complaint with the board charging a person with having been guilty of any of the unlawful practices specified in subsection (a), two or more members of the board shall investigate such charges, or the board may designate and authorize an employee or employees of the board to conduct such investigation. After investigation, the board may institute charges."

The standard of statutory review is well known:

"The interpretation of a statute is a question of law and it is [an appellate court's] function to interpret the statute to give it the intended effect. [Citation omitted.] The administrative interpretation of a statute will be given consideration and effect, but the final construction of a statute rests with the courts. [Citations omitted.]" *U.S.D. No. 279 v. Secretary of Kansas Dept. of Human Resources*, 247 Kan. 519, 524, 802 P.2d 516 (1990).

"It is a fundamental rule of statutory construction to which all other rules are subordinate that the intent of the legislature governs when that intent can be ascertained." *NCAA v. Kansas Dept. of Revenue*, 245 Kan. 553, 557, 781 P.2d 726 (1989).

"In construing statutes, the legislative intention is to be determined from a general consideration of the entire act. Effect must be given, if possible, to the entire act and every part thereof. To this end, it is the duty of the court, as far as practicable, to reconcile the different provisions so as to make them consistent, harmonious, and sensible." *State v. Adee*, 241 Kan. 825, 829, 740 P.2d 611 (1987).

"In determining legislative intent, courts are not limited to consideration of the language used in the statute, but may look to . . . the purpose to be accomplished, and the effect the statute may have under the various constructions suggested." *Citizens State Bank of Grainfield v. Kaiser*, 12 Kan. App. 2d 530, 536, 750 P.2d 422, *rev. denied* 243 Kan. 777 (1988).

In essence, Golay argues K.S.A. 1990 Supp. 65-1120(b) imposes a three-step process for the Board to follow in filing formal disciplinary charges: (1) file a sworn complaint charging a violation has occurred, (2) conduct an investigation, and (3) file formal disciplinary charges. Further, Golay argues K.S.A. 1990 Supp. 65-1120(b) requires "a *sworn* statement to be filed with the Board *when a licensee is [initially] charged with having been guilty of any unlawful practices specified in Subsection (a) of K.S.A. 65-1120.*" She argues the legislature intended to protect licensed nurses from unreasonable attack and the restriction does not place any real burden on the Board since the act does not prevent board employees from filing sworn complaints when necessary. When examination is limited to just the wording of K.S.A. 1990 Supp. 65-1120(b), Golay's arguments have appeal. Nevertheless, consideration must be given "to the entire act," including K.S.A.

1990 Supp. 74-1106(c), which defines the powers and duties of the Board. *State v. Adee,* 241 Kan. at 829.

The district court, in effect, held a sworn complaint must be filed *before* the Board can investigate any of the unlawful practices listed in K.S.A. 1990 Supp. 65-1120(a), which states in relevant part:

"The board shall have the power to deny, revoke, limit or suspend any license or certificate of qualification . . . in the event that the applicant or licensee is found after a hearing:

(1) To be guilty of fraud or deceit in practicing nursing or in procuring or attempting to procure a license to practice nursing;

(2) to have been guilty of a felony if the board determines, after investigation, that such person has not been sufficiently rehabilitated to warrant the public trust;

(3) to have committed an act of professional incompetency;

(4) to be habitually intemperate in the use of alcohol or addicted to the use of habit-forming drugs;

(5) to be mentally incompetent;

(6) to be guilty of unprofessional conduct;

(7) to have willfully or repeatedly violated any of the provisions of the Kansas nurse practice act or any rule and regulation adopted pursuant to that act, including K.S.A. 65-1114 and 65-1122 and amendments thereto; or

(8) to have a license to practice nursing as a registered nurse or as a practical nurse denied, revoked, limited or suspended by a licensing authority of another state, agency of the United States government, territory of the United States or country or to have other disciplinary action taken against the applicant or licensee by a licensing authority of another state, agency of the United States government, territory of the United States or country. A certified copy of the record or order of denial, suspension, limitation, revocation or other disciplinary action of the licensing authority of another state, agency of the United States government, territory of the United States or country shall constitute prima facie evidence of such a fact for purposes of this paragraph (8)."

Paragraph (7) in the statute is a catch-all clause that allows denial, revocation, or limitation of licenses when applicants violate "any of the provisions of the Kansas nurse practice act." Paragraph (8) sets out an alternative to obtaining a sworn complaint before the Board could begin an investigation of a licensee. Certainly, if the Board possessed a certified copy of the record revoking a nurse's license from another state, and that record was prima facie evidence of a nurse's violations warranting disciplinary action in Kansas, a sworn complaint would be superfluous.

A more important problem arises when applying the district court's interpretation of K.S.A. 1990 Supp. 65-1120(b) in situations calling for disciplinary action under K.S.A. 1990 Supp. 65-1120(a). Consider K.S.A. 1990 Supp. 65-1120(a)(1), which allows action to be taken when a nurse has been "guilty of fraud or deceit" in obtaining a license. How would the Board learn that a licensee had used fraud or deceit in obtaining a license? Under the district court's interpretation, the Board would first have to obtain a sworn complaint before it could investigate. Arguably, the Board could not investigate or check out applications filed by those hopeful of receiving nursing licenses without obtaining sworn complaints. Interestingly, Golay claims the Board could investigate claims on license applications under K.S.A. 1990 Supp. 65-1115 and K.S.A. 1990 Supp. 65-1116, which govern licensing of professional and practical nurses. But to what end? The district court held that a sworn complaint must be filed *before* any investigation that is to lead to the filing of disciplinary charges. Thus, Golay's position seems to be that the Board could investigate claims on license applications without sworn complaints under K.S.A. 65-1115 and K.S.A. 65-1116; but, once it was determined there was some fraud, the Board would have to (1) obtain a sworn complaint and (2) conduct another investigation before any formal charges could be brought.

The problem can also be seen by considering K.S.A. 1990 Supp. 65-1120(a)(2), which allows the Board to discipline licensees who have been found guilty of a felony in certain circumstances. The Board could learn from the courts or law enforcement authorities that a nurse had been convicted of several drug-related felonies that would provide a basis for disciplinary action; yet, under the district court's interpretation, a sworn complaint would be necessary before the Board could do anything and then it would have to conduct an investigation before filing disciplinary charges. Again, this requirement is clearly not what the legislature intended. Similar problems arise in considering the other clauses in K.S.A. 1990 Supp. 65-1120(a), especially subparagraph (7), the catch-all clause, which permits disciplinary action when licensees violate any section of the act.

These problems alone might be sufficient to rule the district court erred; nevertheless, further consideration of the act is fitting. K.S.A. 65-1123 states in part:

"When it appears to the board that any person is violating any of the provisions of this act . . . the board may in its own name bring an action in a court of competent jurisdiction for an injunction against such violation . . . and the proper courts of this state may enjoin any person, . . . from violation of this act . . . without regard to whether proceedings have been or may be instituted before the board."

This statute does not require any complaints, whether sworn or unsworn, to be filed with the Board as conditions precedent to bringing an action for injunction. K.S.A. 65-1123 allows the Board to seek injunctions against "any person" who may be violating "any of the provisions" of the act, including K.S.A. 1990 Supp. 65-1120(a). Thus, the legislature clearly intended to allow the Board to seek, on its own motion without first obtaining sworn complaints from anyone, injunctions that could, in effect, prevent licensees from performing nursing duties. Given the conclusion that the Board may seek court-ordered remedies (injunctions) without sworn complaints, the obvious question that arises is how will the Board know that an injunction is necessary without conducting an investigation? Simply, it will not. Further, if the district court is correct that a sworn complaint must be issued before the Board can conduct a 65-1120(b) investigation, the following scenario could occur: The Board could learn by an anonymous telephone call that a nurse, who claimed he or she was licensed in Missouri on an application to obtain a Kansas nursing license, was actually never licensed in Missouri. The Board could investigate that charge and determine it was true. The Board could then seek an injunction to prohibit the nurse from practicing in Kansas based on fraud in obtaining a Kansas license. K.S.A. 65-1123. But then, before holding a hearing to determine if revoking the Kansas license is appropriate, it would have to obtain a sworn complaint against the nurse and conduct a second investigation. K.S.A. 1990 Supp. 65-1120(b).

The construction offered by Golay and the district court leads to inconsistent and illogical ends. This court has a duty to interpret the law so that the provisions are in harmony and they make sense. *State v. Adee,* 241 Kan. at 829. When considering

the entire act, the effect of the various constructions that result when considering the effect of the district court's ruling, and the statutory powers and duties of the Board, it is clear the results are not harmonious nor sensible. Thus, this court cannot accept the district court's ruling nor Golay's argument that the Board must obtain sworn complaints before it can initiate investigations of complaints or concerns about nurses' behavior.

K.S.A. 1990 Supp. 74-1106(c) discusses the duties and powers of the Board and states in part:

"(4) The board shall examine, license and renew licenses of *duly qualified applicants* and *conduct hearings upon charges* for limitation, suspension or revocation of a license or accreditation of professional and practical nursing and mental health technical programs and may limit, deny, suspend or revoke for proper legal cause, licenses or accreditation of professional and practical nursing and mental health technician programs, as hereinafter provided. Examination for applicants for registration shall be given at least twice each year and as many other times as deemed necessary by the board. The board *shall promote improved* means of nursing education and *standards of nursing care through* institutes, conferences and *other means.*" (Emphasis added.)

The Board, like other agencies, may exercise only those powers expressly conferred or necessarily implied by statute. *State ex rel. Secretary of S.R.S. v. Fomby*, 11 Kan. App. 2d 138, 141, 715 P.2d 1045 (1986).

In discussing the Healing Arts Act, the Supreme Court recognized that the whole purpose of that Act is the protection of the public against unprofessional, improper, unauthorized, and unqualified practice and that the Act secures services of competent and trustworthy individuals through licensures. *Kansas State Board of Healing Arts v. Foote*, 200 Kan. 447, 453, 436 P.2d 828 (1968). So, too, it follows that the intent of the legislature in designing the Kansas Nurse Practice Act and practice acts for other licensing agencies was likewise protection of the public through license regulation. A board cannot protect when it cannot investigate. In the present case, it is necessary to infer the authority of the Board to investigate to facilitate the licensure duties of the Board.

This leaves a final question of what interpretation is correct. At this point, it is appropriate to consider the administrative interpretation of K.S.A. 1990 Supp. 65-1120(b). *U.S.D. No. 279*

*v. Secretary of Kansas Dept. of Human Resources,* 247 Kan. at 524. In *Kansas Ass'n of Public Employees v. Public Employee Relations Bd.,* 13 Kan. App. 2d 657, 659, 778 P.2d 377 (1989), this court stated:

"[*Kansas Bd. of Regents v. Pittsburg State Univ. Chap. of K-NEA,* 233 Kan. 801, 667 P.2d 306 (1983),] does contain some teachings which are of broad, general application: usually, the interpretation of a statute by an administrative agency charged with the responsibility of enforcing that statute is entitled to judicial deference. The agency's interpretation of a challenged statute may, in fact, be entitled to *controlling significance* in judicial proceedings. This deference is sometimes called the doctrine of operative construction. [Citation omitted.] Further, if there is a rational basis for the agency's interpretation, it should be upheld on judicial review."

As noted above, the Board argues the statute creates a mandatory duty to investigate sworn complaints against licensees but does not limit the Board's ability to initiate investigations on its own when appropriate. When this interpretation is considered in light of the entire act and in light of the discussion above, it clearly makes sense. The Board's interpretation also allows a harmonious reading of the various sections of the act. For these reasons, this court must give effect to the Board's interpretation of the statute. *U.S.D. No. 279 v. Secretary of Kansas Dept. of Human Resources,* 247 Kan. at 524.

Reversed and remanded for further proceedings.