NOT DESIGNATED FOR PUBLICATION

No. 113,508

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

MELISSA JO VAUGHAN,
*Appellant*,

v.

KANSAS STATE BOARD OF NURSING,
*Appellee*.

MEMORANDUM OPINION

Appeal from Johnson District Court; JAMES F. VANO, judge. Opinion filed February 26, 2016. Affirmed.

*Melissa Jo Vaughan*, appellant pro se.

*Michael R. Fitzgibbons*, assistant attorney general, Kansas State Board of Nursing, for appellee.

Before MALONE, C.J., PIERRON, J., and WALKER, S.J.

*Per Curiam*: Melissa Jo Vaughan appeals disciplinary action taken by the Kansas State Board of Nursing (Board) in the form of a $250 fine and $70 in costs concerning the renewal of her nursing license. The district court affirmed the Board's decision. Vaughan argues the Board erroneously interpreted the regulations concerning continuing nursing education (CNE), lacked authority to discipline or fine renewal applicants, acted beyond its scope of review, erred in finding she willfully violated the regulations, erroneously limited the record, and violated her due process rights. We affirm.

1

Vaughan obtained her associate degree in nursing in 1996. She has annually renewed her license and it was up for renewal again before May 31, 2013. In the meantime, Vaughan had finished an RN to BSN program at the University of Missouri-Kansas City School of Nursing (UMKC) in 2012.

On March 8, 2013, Vaughan completed the online application to renew her nursing license. One of the questions on the online application is whether the applicant has completed 30 hours of CNE required for renewal of a nursing license. Despite the express warning that "[i]f you do not have 30 hours of CNE as required in K.S.A. 65-1117 do not renew until you have the required hours," it is undisputed that Vaughan answered no to having the required number of CNE hours. She submitted her application.

Vaughan's online application caused a host of red flags to go up. On March 11, 2013, the Board requested Vaughan submit verification of her CNE by forwarding the original certificates to the Board office. The Board instructed Vaughan to submit verification of her CNE otherwise "your licensure renewal will be forwarded to the board's legal department for review." On March 27, 2013, Vaughan emailed the Board and stated that she had "inadvertently" answered no on the application, that she had been enrolled in the RN to BSN program at UMKC, and that she wanted the UMKC courses to satisfy her CNE requirements.

On April 3, 2013, Vaughan submitted an Individual Offering Approval (IOA) to obtain CNE credit for the courses she had taken at UMKC. She attached her transcript from UMKC along with course descriptions. On April 4, 2013, the Board approved the IOA and renewed Vaughan's license. However, Vaughan was subjected to a second audit a short time later. On July 10, 2013, Board investigator Lauren Wolf informed Vaughan she was subject to a CNE audit based on her answer of no concerning obtaining 30 hours of CNE. Wolf requested Vaughan provide 30 hours of CNE certificates that were dated between June 1, 2011, Vaughan's prior licensing date, through March 7, 2013, the date

2

Vaughan submitted her renewal application online. Vaughan submitted her IOA approved 60 contact hours. Wolf responded that the UMKC credits did not qualify for Vaughan's renewal period because they were not approved before Vaughan submitted her online renewal application on March 8, 2013. Wolf submitted Vaughan's case to the assistant attorney general for possible disciplinary action.

On August 13, 2013, the Board filed a petition to revoke Vaughan's nursing license. The Board alleged two violations: (1) unprofessional conduct by fraud or deceit in practicing nursing, K.S.A. 65-1120(a)(1); and (2) willfully violating any of the provisions of the Kansas Nurse Practice Act (KNPA), K.S.A. 65-1117(a), and K.A.R. 60-9-106 requiring every licensee with an active nursing license to submit with the renewal application evidence of satisfactory completion of 30 CNE hours obtained within the prior licensing period. At the administrative hearing, Wolf and Diane Glynn, the Board's practice specialist, testified as to their involvement in the case and Vaughan's failed renewal.

An administrative hearing officer concluded that Vaughan had violated the KNPA, specifically K.S.A. 65-1120(a)(7) and K.A.R. 9-106(a) and (c), and that she had "failed to cooperate with the Board to remedy the situation." Based upon those conclusions, the hearing officer suspended Vaughan's nursing license for 15 consecutive days, imposed a $250 civil fine, assessed $70 in costs, and ordered Vaughan to inform her employer that her Kansas nursing license was temporarily suspended. Vaughan timely filed for a review by the Board, and the Board only granted review on the limited issues of: "(1) whether the conclusion in the Initial Order that Respondent 'failed to cooperate with the Board to remedy the situation' is supported by the factual findings in the Initial Order and (2) whether the suspension of Respondent's nursing license for 15 consecutive days is unreasonable, arbitrary or capricious."

3

The Board granted relief on the suspension of Vaughan's nursing license but denied her any reprieve on the fines and costs assessed against her. Initially, Vaughan requested the Board consider a transcript she had personally prepared of the administrative hearing, but the Board found the statutes did not authorize a transcript from a recording other than the one caused to be made at the agency's expense to be part of the agency record. On the merits, the Board found there was no evidence to support the hearing officer's finding that Vaughan had failed to cooperate with the Board or remedy the situation—instead the Board found Vaughan had "complied with requests for information." The Board also found that the nursing statutes and regulations, specifically K.S.A. 2013 Supp. 65-1117(a) and K.A.R. 60-9-106(a), provide that because a licensed nurse must be able to properly document completion of CNE when the renewal application is submitted, it is clear the approval of college classes as CNE must be finalized prior to submitting the renewal application. Consequently, the Board found Vaughan intentionally violated the KNPA. Weighing the equities on both sides, the Board found the 15-day suspension was unreasonable but that to deter Vaughan and other nurses from future violations, the Board left intact the $250 fine and $70 in costs. Vaughan filed a petition for judicial review.

The district court held a nonevidentiary hearing on the matter. In a very limited journal entry, the court affirmed the Board's decision. The court made the following findings:

> "1. The Court finds sufficient evidence from the agency record that petitioner [Vaughn] failed to submit documentation prior to the renewal of her license.
> "2. This Court Affirms the Board's Order imposing a civil fine of $250 and a costs of $70.
> "3. This Court will continue . . . the Stay on the Effectiveness of this Order for 30 days from the date of filing."

Vaughan appeals.

4

*Standard of Review*

This action is brought as a judicial review of agency actions according to the Kansas Judicial Review Act (KJRA), K.S.A. 77-601 *et seq.* We review the Board's order pursuant to the KJRA to determine if the Board's findings are supported by substantial evidence based on the record as a whole. K.S.A. 2014 Supp. 77-621(c)(7),(d). In doing so, we do not reweigh the evidence or engage in de novo review. K.S.A. 2014 Supp. 77-621(d).

We have unlimited review of questions involving the interpretation or construction of a statute, owing no significant deference to the Board's interpretation or construction. *Bryant v. Midwest Staff Solutions, Inc.*, 292 Kan. 585, 587, 257 P.3d 255 (2011). We may grant relief if we determine the Board erroneously interpreted or applied the law. K.S.A. 2014 Supp. 77-621(c)(4). In making that determination, we apply the law de novo to undisputed facts. See *Ft. Hays St. Univ. v. University Ch., Am. Ass'n of Univ. Profs.*, 290 Kan. 446, 456-57, 228 P.3d 403 (2010).

Vaughan first argues the Board erroneously interpreted the statutes and regulations concerning CNE and the renewal of her nursing license.

Nurses are required to renew their licenses every 2 years in order to continue practice nursing. CNE is a critical component of the renewal process. K.S.A. 2014 Supp. 65-1117(a) provides, in relevant part: "[E]very licensee with an active nursing license shall submit with the renewal application evidence of satisfactory completion of a program of continuing nursing education required by the board. The board by duly adopted rules and regulations shall establish the requirements for such program of continuing nursing education."

The crux of Vaughan's argument is that the Board failed to properly apply K.S.A. 65-1119(e) concerning her UMKC courses. It provides in full:

"(1) To qualify as an approved provider of continuing nursing education offerings, persons, organizations or institutions proposing to provide such continuing nursing education offerings shall apply to the board for approval and submit evidence that the applicant is prepared to meet the standards and requirements established by the rules and regulations of the board for such continuing nursing education offerings. Initial applications shall be made in writing on forms supplied by the board and shall be submitted to the board together with the application fee fixed by the board.

"(2) A long-term provider means a person, organization or institution that is responsible for the development, administration and evaluation of continuing nursing education programs and offerings. Qualification as a long-term approved provider of continuing nursing education offerings shall expire five years after the granting of such approval by the board. An approved long-term provider of continuing nursing education offerings shall submit annually to the board the annual fee established by rules and regulations, along with an annual report for the previous fiscal year. Applications for renewal as an approved long-term provider of continuing nursing education offerings shall be made in writing on forms supplied by the board.

"(3) Qualification as an approved provider of a single continuing nursing education offering, which may be offered once or multiple times, shall expire two years after the granting of such approval by the board. Approved single continuing nursing education providers shall not be subject to an annual fee or annual report.

"(4) In accordance with rules and regulations adopted by the board, the board may approve individual educational offerings for continuing nursing education which shall not be subject to approval under other subsections of this section.

"(5) The board shall accept offerings as approved continuing nursing education presented by: Colleges that are approved by a state or the national department of education and providers approved by other state boards of nursing, the national league for nursing, the national federation of licensed practical nurses, the American nurses

credentialing center or other such national organizations as listed in rules and regulations adopted by the board.

"(6) An individual designated by a provider of continuing nursing education offerings as an individual responsible for CNE who has held this position for the provider at least five years immediately prior to January 1, 1997, shall not be required to have a baccalaureate or higher academic degree in order to be designated by such provider as the individual responsible for CNE."

The Board is specifically charged with adopting rules and regulations for license renewal and CNE. K.S.A. 2014 Supp. 65-1117(a). One rule in particular is at issue. K.A.R. 60-9-106 (2009) is entitled "Continuing nursing education for license renewal." It provides in relevant part:

"(a) At the time of license renewal, each licensee shall submit proof of completion of 30 contact hours of approved continuing nursing education (CNE). This proof shall be documented as specified on the renewal notice and shall include the following:

(1) Name of CNE offering or college course;

(2) provider name or name of the accrediting organization;

(3) provider number or number of the accrediting organization, if applicable;

(4) offering date; and

(5) number of contact hours.

"(b) The required 30 contact hours of approved CNE shall have been completed during the most recent prior licensing period. Contact hours accumulated in excess of the 30-hour requirement shall not be carried over to the next renewal period.

"(c) Acceptable CNE may include any of the following:

(1) An offering presented by an approved long-term or single provider;

(2) an offering as designated in K.S.A. 65-1119(e), and amendments thereto;

(3) an offering for which a licensee has submitted an individual offering approval (IOA). Before licensure renewal, the licensee may submit an application for an IOA to the board, accompanied by the following:

(A) An agenda with behavioral objectives describing learning outcomes; and

(B) official documentation of earned contact hours. . . ." K.A.R. 60-9-106 (2009).

7

The statutes and regulations providing the qualifications and purpose of CNE are important as well. See *Golay v. Kansas State Board of Nursing*, 15 Kan. App. 2d 648, 654, 814 P.2d 970 (1991) ("[T]he intent of the legislature in designing the Kansas Nurse Practice Act and practice acts for other licensing agencies was likewise protection of the public through license regulation."). Continuing nursing education means "learning experiences intended to build upon the educational and experiential bases of the registered professional and licensed practical nurse for the enhancement of practice, education, administration, research or theory development to the end of improving health of the public." K.S.A. 2014 Supp. 65-1117(a). The Board's regulations also provide a quite similar definition of a CNE offering: "'Offering' means a single CNE learning experience designed to enhance knowledge, skills, and professionalism related to nursing. Each offering shall consist of at least 30 minutes to be computed towards a contact hour." K.A.R. 60-9-105(n) (2009). The dilemma, here, is what type of approval, if any, of CNE is necessary for credit to be given for courses at a college pursuant to K.S.A. 65-1119(e)(5).

*Analysis*

Vaughan argues the Board lacks authority to deny approval of CNE presented by colleges and other approved providers found in K.S.A. 65-1119(e)(5). She claims there are no statutory documentation requirements for this type of CNE category and the CNEs do not require preapproval. Vaughan contends the requirements for individual offerings in K.S.A. 65-1119(e)(4) do not apply to this situation.

It is important to note that K.A.R. 60-9-106(e)(2) and (4) provide guidance on what college courses *will not* be credited as contact hours for CNE by stating the following are not recognizable CNE: (1) offerings containing the same content as courses that are part of basic preparation at the level of current licensure or certification, and (2)

8

an incomplete or failed college course or any college course in literature and composition, public speaking, basic math, algebra, humanities, or other general education requirements unless the course meets the definition of CNE. K.A.R. Consequently, imbedded within the two offering/course restrictions in K.A.R. 60-9-106(e)(2) and (4) is the contemplation by the Board whether to approve or reject a request for an offering/course to count as CNE.

Vaughan argues the Board failed to recognize UMKC as an approved school of nursing for purposes of K.S.A. 65-1119. Vaughan maintains that her courses at UMKC fell within K.S.A. 65-1119(e)(5) as being provided by a "college . . . approved by a state or the national department of education." Further, Vaughan contends her classes were offerings as defined above and the Board actually found the classes were offerings when it approved her IOA. Therefore, she insists the UMKC courses automatically qualified as CNE.

Each time Vaughan was audited by the Board, she submitted the course descriptions from UMKC and her official UMKC transcript. She claims it is undisputed that her transcript and course descriptions satisfied the documentation requirements for K.A.R. 60-9-106(a). Vaughan directs us to K.A.R. 60-9-105(g) 2009—now K.A.R. 60-9-105(h) 2014 Supp.—where the Board establishes a concrete formula for recognizing credit for college courses: "'College Course' means a class taken through a college or university and meeting the definition of CNE in K.S.A. 65-1117 and amendments thereto. One college credit hour equals 15 contact hours."

Vaughan argues the Board erred in finding that she was required to submit CNE credit for her UMKC classes through an IOA form. She contends she was not required to submit any certificate requirements under K.A.R. 60-9-107(g) because UMKC was neither a long-term nor single offering provider. She also contends the IOA form only applies to individual offerings pursuant to K.A.R. 60-9-106(c)(3). See K.S.A. 65-

9

1119(e)(4) ("In accordance with rules and regulations adopted by the board, the board may approve individual educational offerings for continuing nursing education which shall not be subject to approval under other subsections of this section."). Vaughan argues the language in K.S.A. 65-1119(e)(5) is mandatory that the Board shall accept offerings as approved CNE presented by approved colleges.

Vaughan argues the Board's order and Glynn's testimony boil down to an "illogical, legally-incorrect presumption" that because her CNE presented by a college was presented by a long-term or single provider, then she was required to document her CNE presented by a college through an IOA. Consequently, she is adamant that she cannot be guilty of violating K.A.R. 60-9-106(c)(3) which only applies to individual offerings. However, we find Vaughan's logic to be impractical.

There is no evidence that UMKC was an approved provider of CNE—either long term or single offering provider. K.S.A. 65-1119(e)(2), (3); K.A.R. 60-9-107(a). At least for CNE purposes, UMKC does not have any reporting requirements to the Board concerning the classes it offers in its nursing curriculum. Vaughan should have inquired of the Board, prior to filing her renewal application, to approve her courses at UMKC as CNE. The Board's own regulations provide that "[a]t the time of license renewal," any licensee may be required to submit proof of approved CNE. K.A.R. 60-9-106(a). The vehicle to make such a request is the IOA form. K.A.R. 60-9-105(l) (2009) defines "Individual offering approval" as an applicant's "request for approval of an education offering meeting the definition of CNE, as defined in K.S.A. 65-1117 and amendments thereto, but not presented by an approved provider, as described in K.S.A. 65-1119 and amendments thereto." We agree with the Board that until such time as an IOA was approved in this case, valid CNE hours did not exist. The Board contends that if a licensee takes a course that would otherwise qualify as CNE, even from a college as set forth in K.S.A. 65-1119(e)(5), but he or she never submits an IOA request, the putative CNE hours are never recognized. The Board's order stated:

10

"28. Because not all college courses automatically qualify as CNE, Respondent was required to obtain approval for the college courses qualifying as CNE under K.A.R. 60-9-106. She did not get approval for the college courses as CNE under K.A.R. 60-9-106(c)(3) and (10) *before* she submitted her renewal application. Thus, her "no" response on the renewal application to the question about completion of CNE was correct and did not mislead the Board."

Alternatively, Vaughan contends that if the Board was correct that she was required to go through the IOA process for her CNE presented by a college, then she still complied with the renewal process prior to the expiration of her license. K.S.A. 2014 Supp. 65-1117(a) provides: "Every person so licensed who desires to renew such license shall file with the board, on or before the date of expiration of such license, a renewal application together with the prescribed biennial renewal fee." Vaughan states her IOA was approved by the Board as of April 16, 2013—1 1/2 months before the expiration of her license on May 31, 2013.

Vaughan uses the following line of thinking: (1) Each applicant must file a renewal application "on or before the date of expiration of such license"; (2) 30 hours of approved CNE must be completed "during the most recent prior licensing period"; (3) "at the time of license renewal" the license may be required to submit proof of CNE; (4) an IOA must be submitted "[b]efore licensure renewal"; and (5) "license renewal" is an act performed by the Board the day after the license expiration date. K.S.A. 2014 Supp. 65-1117(a); K.A.R. 60-9-106(a), (b), (c)(3). Consequently, Vaughan argues her documentation deadline was the same day as her license expired—May 31, 2013—and she was clearly within that time frame. Vaughan contends the Board is reading words into the statutes and regulations by requiring her to submit the CNE documentation any time prior to May 31, 2013.

11

Vaughan fails to grasp the Board's position that disciplinary action taken against her was not premised on her failing to complete 30 CNE hours before her license expired. Rather, the Board's argument has always been that she failed to have those hours at the time of her renewal application and she had to follow the proper procedure like every other nurse in Kansas who sought to renew his or her nursing license or face possible disciplinary action. Because Vaughan had not applied for approval of her college course work, it is difficult to conceive how she could have truthfully answered anything other than no to the CNE question on the renewal application. The Board contends the factfinders reasonably discounted Vaughan's claim that she twice inadvertently answered no on her renewal application and found her actions were willful. See *Kansas State Board of Nursing v. Burkman*, 216 Kan. 187, 192, 531 P.2d 122 (1975) ("While willful has been said to be a word of many meanings depending on the context in which it is used, it generally connotes proceeding from a conscious motion of the will—an act as being designed or intentional as opposed to one accidental or involuntary."). We are perplexed why Vaughan would complete her online renewal application 3 months early and answer that she had not yet completed her 30 hours of CNE.

It is a violation of the KNPA for a licensee to attempt to renew his or her license without obtaining the requisite number of approved CNE hours. The Board's finding that Vaughan willfully violated the KNPA by failing to obtain 30 hours of approved CNE prior to completing the online renewal application is supported by the evidence. K.S.A. 2014 Supp. 65-1117; K.S.A. 2014 Supp. 65-1120; K.A.R. 60-9-106. We do not find the Board's policy to be unreasonable. When a licensee completes an online renewal, he or she must be prepared to provide evidence of approved CNE. If the licensee has taken no action to obtain approval of CNE, there is no way he or she can meet the expectation of the Board's regulation in K.A.R. 60-9-106(a).

We now turn to the issue of whether the Board had the authority to discipline Vaugh.

12

Having determined that Vaughan violated K.S.A. 2014 Supp. 65-1117(a) and K.A.R. 60-9-106(a), the remaining issue for the Board was whether the hearing officer ordered appropriate disciple for Vaughan's failure to have approved CNE prior to submission of her renewal application. Vaughan argues the Board lacked the authority to discipline or fine renewal applicants for noncompliance with renewal conditions.

In circuitous reasoning, Vaugh states she was not *required* to renew her license and the CNE requirements are a condition precedent to renewal. Consequently, her failure to satisfy the CNE requirements prior to a nonmandatory renewal cannot be grounds for discipline. She contends the only permissible action was a refusal to renew her license until the condition was satisfied.

The Kansas statutes and nursing regulations provide for appropriate disciplinary measures. K.S.A. 2014 Supp. 65-1120(a) states, "The board may deny, revoke, limit or suspend any license or authorization to practice nursing . . . if the applicant, licensee or holder of a temporary permit or authorization is found after hearing: . . .(7) to have willfully or repeatedly violated the provisions of the Kansas nurse practice act or any rules and regulations adopted pursuant to that act, including K.S.A. 65-1114 and 65-1122, and amendments thereto." The Board, in addition to any other penalties described by law, may assess a civil fine against any person granted a nursing license "for a violation of a law or rule and regulation applicable to the practice for which such person has been granted a license." K.S.A. 74-1110. Fines up to $1,000 for the first violation up to $3,000 for the third and each subsequent violation are permissible. K.S.A. 74-1110.

Licensure requirements are intended to protect the public from unapproved nurses. See *Burkman*, 216 Kan. at 190; *Morra v. State Board of Examiners of Psychologists*, 212 Kan. 103, 111, 510 P.2d 614 (1973). Renewal mechanisms not only allow for the expeditious renewal of nursing licensees but also for audits to ensure that there has been

13

compliance with the process. Vaughan attempts to limit the Board's statutory authority under K.S.A. 74-1110 to issue civil fines only for "practice" violations. We do not read K.S.A. 74-1110 in such a restrictive manner. The Board, like other agencies, may exercise only those powers expressly conferred or necessarily implied by statute. *State ex rel. Secretary of S.R.S. v. Fomby*, 11 Kan. App. 2d 138, 141, 715 P.2d 1045 (1986). In the nursing profession, a nurse is required to hold a current nursing license. Renewal of that license in order to practice nursing is part of the profession. We find the Board was authorized to order a civil penalty for Vaughan's failure to properly renew her license pursuant to K.A.R. 60-9-106.

## COLLATERAL ISSUES

There are multiple issues raised by Vaughan that are collateral to the discipline ordered by the Board.

*Transcript and Exhibits*

First, Vaughan contends the Board and district court erroneously limited the record on review. She states that with the full knowledge of all parties she recorded the December 23, 2013, administrative hearing. She then transcribed the recording and offered it to the Board with an attestation as to its validity. The Board determined the transcript was not properly part of the agency record.

The Board argues the statutes are clear concerning preparation of transcripts of an agency hearing. K.S.A. 2014 Supp. 77-523(e) provides:

> "(e) The presiding officer shall cause the hearing to be recorded at the state
> agency's expense. The state agency is not required, at its expense, to prepare a transcript,
> unless required to do so by a provision of law. Any party, at the party's expense and
> subject to such reasonable conditions as the state agency may establish, may cause a

14

person other than the state agency to prepare a transcript from the state agency's record, or cause additional recordings to be made during the hearing."

Vaughan argues the Board's reasoning is absurd if she was permitted to record the hearing but not allowed to prepare a transcript from that recording. A transcript of the administrative hearing was not prepared for the Board but was prepared for the district court. Vaughan argues this transcript contains errors and omissions because it is partially inaudible. She filed a motion for corrections to the administrative hearing transcript including 21 pages of corrections and/additions. Vaughan argues the Board and district court erred in failing to consider her transcript because K.S.A. 2014 Supp. 77-532(b)(4) and (8) indicate the state agency record shall include "evidence received or considered: and "any transcript of all or part of the hearing considered before final disposition of the proceeding." The district court found that "the record that was considered by the Kansas State Board of Nursing was sufficient." The court found Vaughan's transcript did not "add anything at all" to the agency record.

Vaughan also argues she submitted nine exhibits at the administrative hearing and she attempted to have the Board include the exhibits in the agency record but was denied. The district court granted the Board's motion to strike the additions and denied Vaughan's motion to allow evidence beyond the record. Vaughan states that K.S.A. 77-620 requires the entire agency record to be transmitted to the court and neither the Board nor the court had the authority to exclude the exhibits she had submitted before the administrative hearing.

The state agency maintains the official record in an administrative case. K.S.A. 2014 Supp. 77-532 expressly mandates that the "state agency shall maintain an official record of each formal hearing." Additional evidence in addition to the agency record may be added if it relates to the validity of the agency action at the time it was taken and is needed to decide disputed issues regarding the unlawfulness of procedure or of a

15

decision-making process. K.S.A. 77-619(a)(2). We have examined the entire appellate record in this case. Vaughan has not established that any of the exhibits or her personal transcript are necessary for us to decide the lawfulness of the Board's disciplinary action. Consequently, any error, if error exists at all, regarding the administrative record was harmless.

*Unauthorized Statutory Disciplinary Scheme*

Second, Vaughan argues the Board's renewal policy of granting license renewals and then auditing CNE hours after the fact is statutorily unauthorized. She contends the Board illegally shifted from a statutory mandated relicensing scheme to an unauthorized disciplinary process. She argues this shift does not comply with K.S.A. 2014 Supp. 65-1117 and K.A.R. 60-9-106. Vaughan concludes that if the Board believed that her CNE documentation was insufficient, then the only remedy authorized by statute and rule was to not issue the renewal license until her CNEs were approved. She claims there is no authority for discipline in this situation. Vaughan comments that a reversal of her discipline will not prevent the Board from disciplining other licensees who answer the online questions dishonestly, provide false information, or who practice nursing without a current license. Vaughan contends she cannot be disciplined under the authority of K.S.A. 74-1110 because that statute only authorizes the Board to issue civil fines for nurses committing "practice" violations. We have previously addressed how the Board's authority to issue civil fines in this case is encompassed within the Board's authority in K.S.A. 74-1110.

*Board Acted Beyond its Jurisdiction*

Third, Vaughan argues the Board acted beyond its jurisdiction by issuing findings in its final order that went beyond the scope of its limited review. The hearing officer found that Vaughan had violated K.S.A. 65-1120(a)(7) and K.A.R. 60-9-106(a) and (c).

16

Because the Board stated that its review of the hearing officer's order was limited to whether there was sufficient evidence to support the finding that she failed to cooperate with the Board and whether the 15-day suspension was unreasonable, then it was outside the Board's jurisdiction to find that Vaughan had violated K.S.A. 2014 Supp. 65-1117(a). Vaughan requests a finding that the hearing officer's order controls except for the two issues reviewed by the Board. However, the hearing officer specifically found that Vaughan had "failed to comply with the CNE requirements" and that finding is controlling throughout this case.

*Failure to Indicate the Type of Proof Requested*

Vaughan argues the Board acted contrary to K.A.R. 60-9-106(a) because it failed to indicate on her renewal notice the manner in which the CNE "shall be documented." K.A.R. 60-9-106(a) provided at the time of the license renewal in this case that "each licensee shall submit proof of completion of 30 contact hours of approved continuing nursing education (CNE). This proof shall be documented as specified on the renewal notice . . . ." However, on May 10, 2013, the Board amended its rules and regulations in K.A.R. 60-9-106(a) to provide that at the time of license renewal "any licensee may be required to submit proof of completion of 30 contact hours of approved continuing nursing education (CNE)." K.A.R. 60-9-106(a) 2014 Supp. Vaughan also argues the Board was required to "verify the accuracy of the application and grant a renewal license." K.S.A. 2014 Supp. 65-1117(a). Consequently, Vaughan contends the Board was required to verify her application before granting a renewal license and acted contrary to these statues and regulations by renewing her license before verifying the accuracy of the application.

We find no merit to Vaughan's argument. The shift in the Board's rules relieved the licensee applicants of the responsibility of providing actual proof of 30 CNE hours at the time of submitting the online renewal application. K.A.R. 2014 Supp. 60-9-106(a).

17

This requirement in no way relieved the licensee of the requirement of actually obtaining 30 CNE hours for proper license renewal. As discussed above, the licensee may at a later time be required to provide proof of the 30 CNE hours to the Board.

*Due Process*

Last, Vaughan argues the Board violated her due process rights under the Fourteenth Amendment to the United States Constitution.

Vaughan argues the licensing statutes and regulations, specifically K.S.A. 65-1117, K.S.A. 65-1119, and K.A.R. 60-9-106, are unconstitutionally vague. Based on past procedures for obtaining CNE credit for college courses and the fact that the previous statutes and regulations have not substantially changed, Vaughan argues an ordinary person would not understand that clicking "No" on the online registration would result in revocation procedures or discipline or that college courses must be submitted in an IOA unless provided by a long-term or single offering provider. She claims the statutes are vague as to what acts are prohibited and/or required. The requirement that Vaughan obtain 30 hours of CNE before she renews her license is not vague. She had never claimed that she did not understand this requirement. The statutes, regulations, and online registration clearly instruct the licensee to make sure he or she has obtained 30 CNE hours prior to renewal. Vaughan's vagueness claim is without merit.

Vaughan argues the administrative hearing officer was biased in favor of the Board and denied her procedural due process before an impartial tribunal. "It is axiomatic that '[a] fair trial in a fair tribunal is a basic requirement of due process.'" *Caperton v. A.T. Massey Coal Co., Inc.*, 556 U.S. 868, 876, 129 S. Ct. 2252, 173 L. Ed. 2d 1208 (2009). This principle applies to administrative agencies which adjudicate as well as to courts. *Davenport Pastures v. Board of Morris County Comm'rs*, 291 Kan. 132, 139, 238 P.3d 731 (2010). Whether a right to due process has been violated is a question of law

18

over which this court exercises unlimited review. *City of Wichita v. McDonald's Corp.*, 266 Kan. 708, 722, 971 P.2d 1189 (1999) (reviewing, de novo, whether a regulation of traffic flow to and from private property was a compensable taking).

Vaughan's bias argument is based on the fact that the administrative hearing officer and the Board's attorney conducted an ex parte telephone conference whereby the Board's attorney asked for and was granted a discovery advantage over Vaughan when the hearing officer granted the Board's attorney permission to reduce the response time from 30 days to 10 days for requests for admissions. Vaughan did not respond to the requests for admissions. At the administrative hearing, Vaughan attempted to raise the issue, but the administrative hearing officer found the issue was moot because the Board's attorney indicated he would not rely on the admissions because he would just ask Vaughan the questions at the hearing. Vaughan argues the granting of the ex parte request shows bias. She also argues the hearing officer's order shows bias in its ruling where it ignored her arguments, relied on Glynn's testimony as legal authority, found Vaughn failed to cooperate with the Board, and imposed a harsh suspension and fine.

Vaughan also argues bias is evident in the hearing officer's treatment of her case in clear contradiction to other dispositions. She cites the same hearing officer's decision in a 2010 nursing license renewal case. Vaughan also argues the hearing officer had ex parte communications with the Board's attorney and the Board's staff immediately prior to the administrative hearing. Vaughan argues nearly all of the Board's cases are in front of the same hearing officer and the bias is evident and impacts all nurses facing Board discipline. She also argues when the bias occurs at the administrative hearing level, it is difficult to overcome any bias because the presumptions and burdens of proof are more advantageous to the Board during an appeal.

Vaughan also claims bias in having Garet King and Jeanne Walsh as the delegated decision-making authority to decide her case. Vaughan argues Walsh has previously been

found to have violated the due process rights in an administrative appeal. See *Byrnes v. Johnson County Community College*, No. 10-2690-EFM-DJW, 2011 WL 3667227 (D. Kan. 2011) (unpublished opinion). Vaughan states that King is a banker and not a nurse and was appointed to the Board in 2012. Vaughan argues bias because the final order has an instance where "CLE" was used instead of "CNE." Vaughan also suggests that since Diane Glynn writes the law for the Board that she has a highly vested interest in a successful prosecution of Vaughn. Otherwise, it would be a direct reflection on her ability if the Board disagreed with her position. Vaughan suggests that Glynn drafted the Board's final order for the Board members to protect her interests and she used deceptive manipulation and paraphrasing in the order.

The basic elements of due process include notice and an opportunity to be heard at a meaningful time and in a meaningful manner. *Village Villa v. Kansas Health Policy Authority*, 296 Kan. 315, 331, 291 P.3d 1056 (2013). In analyzing a due-process claim, a court ordinarily first determines whether due process is even implicated—which happens when the plaintiff is denied a protected property or liberty interest. See *Winston v. Kansas Dept. of SRS*, 274 Kan. 396, 409-11, 49 P.3d 1274 (2002). If due process is implicated, the court then determines what process is due. *Village Villa*, 296 Kan. at 331. The fact that a tribunal rules against you does not rise to a claim of bias or due process—that is exactly what Vaughan would have us hold. Vaughan has not demonstrated any instance of bias that prejudiced her ability to present her case and be heard by the hearing officer, the Board, or the district court.

As far as substantive due process rights, Vaughan argues her defense of her license was an exercise of a fundamental right and when the Board punished her for such an exercise, it violated her Fourteenth Amendment substantive due process rights. Vaughan claims the switch to an online renewal process that does not allow an applicant to list out their CNEs violates the Kansas statutes. Consequently, if a licensee is audited and deemed to have violated the CNE requirements the resulting harsh punishment lacks any

20

rational basis. Vaughan argues the son of the Board's executive administrator botched the task of upgrading the relicensing software and the resulting disciplinary system does not comply with K.S.A. 2014 Supp. 65-1117(a). Vaughan makes personal attacks involving nepotism and ineptitude. She argues there is no rational basis for requiring renewal applicants to possess all CNE documentation when they submit their online renewal application because the Board automatically renews the license and then conducts a post-audit. She contends that since the Board may or may not look at a licensee's CNE hours at the time of renewal, there is absolutely no reason to require renewal applicants to have completed their CNE until the end of the licensing period. Vaughan also argues the current policy also determines guilt before a due process hearing and results in a disproportionate and unduly harsh punishment for nurses deemed nonqualified for renewal.

Vaughan's constitutional arguments are without merit and a redeployment of the prior challenges to the statues and regulations. The Board states that Vaughan's claims culminate with a personal attack on the son of the Board's executive administrator. Substantive due process protects an individual from arbitrary action, and the applicable standard is one of reasonableness. Analyzing a substantive due process claim requires balancing "'the nature of the individual interest infringed, the importance of the government interest furthered, the degree of infringement and the sensitivity of the government entity responsible for the action to more carefully tailored alternative means of achieving its goal.' [Citations omitted.]" *Darling v. Kansas Water Office*, 245 Kan. 45, 51, 774 P.2d 941 (1989). Vaughan was apprised of the charges and evidence against her, she was allowed to present evidence on her behalf, and to cross-examine witnesses. Vaughan received all the process she was due.

Affirmed.